IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARPENTERS PENSION TRUST FUND ) | | |
| FOR NORTHERN CALIFORNIA and ) | | |
| CARPENTERS ANNUITY TRUST FUND ) | | |
| FOR NORTHERN CALIFORNIA, individually ) | | |
| and on behalf of all others similarly situated, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 16 C 10510 | |
| v. ) | | |
| ) | Judge Robert W. Gettleman | |
| THE ALLSTATE CORPORATION, THOMAS ) | | |
| J. WILSON, and MATTHEW E. WINTER, ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California,[1] individually and on behalf of others similarly situated, have brought a two count putative class action amended complaint against defendant Allstate Corporation ("Allstate"), its Chief Executive Officer ("CEO"), Chairman, and President from 2005 to 2015 Thomas Wilson, and the CEO and President of Allstate Financial Matthew Winter, who also took over for Wilson as President in 2015 (collectively "defendants"). Count I alleges that defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Count II, brought only against Wilson and Winter, alleges control person liability under Section 20(a) of the Exchange Act. 15 U.S.C. § 78t(a). Defendants have moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P.

---

[1] This case was originally brought by City of St. Clair Shores Police and Fire Retirement System. The court granted Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California's motion for appointment as lead plaintiffs on January 17, 2017, (doc. 35) and has revised the case caption accordingly.

12(b)(6), and failure to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). For the reasons discussed below, the court denies defendants' motion to dismiss.

## **BACKGROUND**[2]

Plaintiffs bring this complaint on behalf of a class of investors that purchased Allstate common stock between October 29, 2014, and August 3, 2015 ("plaintiffs"). Plaintiffs claim that defendants are liable under Sections 10(b) and 20(a) for material false statements and omissions regarding the cause of an alleged spike in auto insurance claims frequency. According to plaintiffs, Allstate implemented a plan to attract more auto insurance customers starting in 2013. Plaintiffs further allege that an undisclosed element of that plan was to greatly reduce Allstate's underwriting standards to attract customers who would have previously been considered too risky, and would not have been approved for an Allstate auto insurance policy. Plaintiffs claim that this undisclosed strategy to attract more customers worked, and resulted in a significant increase in auto insurance claims frequency starting in October 2014.

---

[2] The facts in this background section are taken from allegations of the amended complaint, which are presumed true for purposes of resolving defendants' motion to dismiss. Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). In addition, although a court normally should not consider extrinsic evidence without converting a motion to dismiss into a summary judgment motion, the court may consider documents referenced in the complaint and central to plaintiff's claims, as well as matters of public record. Hecker v. Deere & Co., 556 F.3d 575, 582-83 (7th Cir. 2009); Gen. Elec. Cap. Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997). Defendants have attached a number of such documents to their motion papers, mostly SEC filings and other public documents, some of which are relied on in this background section. Additionally, plaintiffs submitted an "expert declaration" along with their opposition to defendants' motion to dismiss. Defendants are correct that plaintiffs may not amend their complaint in such a way. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984). Accordingly, the court gave no consideration to plaintiffs' "expert declaration."

Plaintiffs further allege that, when asked about the increase in auto insurance claims frequency, defendants made several materially false statements attributing the increase to external factors rather than Allstate's undisclosed reduction in underwriting standards. According to plaintiffs, these misstatements convinced initially skeptical securities analysts to view Allstate's financial outlook favorably despite the fact that its competitors were not experiencing similar increases in auto insurance claims frequency.

These misstatements, according to plaintiffs, were revealed in part when Allstate partially disclosed the negative impact of its reduced underwriting standards on February 4 and May 5, 2015. Plaintiffs claim that Allstate's stock remained artificially inflated until August 3, 2015, when Allstate issued a press release reporting its financial results for the second quarter of 2015, fully disclosing the negative impact of its reduced underwriting standards. Investors were allegedly shocked when the press release reported a claims frequency increase for the third consecutive quarter, an operating income drop of 57% from the previous quarter, and an operating earnings per share of 35% below analysts' consensus. Allstate's stock fell more than 10% that same day. Plaintiffs further allege that Winter connected the claims frequency to Allstate's reduced underwriting standards for the first time in that press release, and admitted that the impact was expected during an earnings call the following day.

Additionally, plaintiffs allege that Wilson engaged in suspicious insider selling when he liquidated $33 million worth of Allstate stock, which represented 85% of his direct holdings, in November 2014. Then, in May 2015 Wilson allegedly sold another $6.2 million worth of his stock.

**DISCUSSION**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a Rule 12(b)(6) motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because plaintiffs' Section 10(b) claims sound in fraud, they are also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaint must provide "the who, what, when, where and how" of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

In addition to Rule 9(b), to check against pleading abuses in private securities fraud suits, the PSLRA has further heightened the pleading requirements. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314-15 (2007). Under the PSLRA, the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and

belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The PSLRA also imposes a substantially higher standard of pleading scienter. The complaint must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind is an "intent to deceive, manipulate or defraud." Higginbotham v. Baxter Int.'l Inc., 495 F.3d 753, 756 (7th Cir. 2007). For an inference to be 'strong," it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

### I. Count I - Section 10(b) and Rule 10b-5

Count I alleges that defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5. Section 10b, 15 U.S.C. § 78j(b), makes it unlawful:

> To use or employ, in connection with the purchase or sale of any security registered as on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of [any SEC rule or regulation].

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

To state a claim under Section 10(b) and Rule 10b-5, plaintiffs must allege: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases

5

involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." Dura Pharms. Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (internal quotation marks omitted). Defendants argue that plaintiffs have failed to meet this burden because plaintiffs do not identify any false or misleading statement of fact, the complaint fails to plead facts that give rise to strong inference of scienter, and plaintiffs do not allege that their losses were caused by the alleged fraud. The court will address these arguments in turn.

### A.    False or Misleading Statements of Fact

According to defendants, plaintiffs have failed to identify any statements that were false or misleading, primarily because defendants' statements regarding the reasons for an increase in auto claims frequency were opinions, not determinable facts. See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S. Ct. 1318, 1325 (2015) ("Most important, a statement of fact ('the coffee is hot') expresses certainty about a thing, whereas a statement of opinion ('I think the coffee is hot') does not."). The court disagrees. Plaintiffs provide numerous allegedly misleading factual statements, but the court need not address them all. A few illustrative examples will suffice.

Plaintiffs allege that during an October 30, 2014, earnings call an analyst asked Wilson and Winter whether Allstate was pricing for increased claims frequency. In response, Winter allegedly stated that, "our frequency so far has been extremely favorable to prior year" and, "our frequency trends have been good." According to plaintiffs, however, Allstate had experienced an increase in claims frequency in October 2014, and Wilson and Winter later admitted during a February 5, 2015, earnings call that they had noticed a "tick-up" in claims frequency in October 2014, which they had spent an "untold number of hours" analyzing. During that call Winter

6

allegedly told investors that defendants "saw nothing to indicate that [the increase in claims frequency] was driven by growth," and instead attributed the increase to "miles driven and precipitation," assuring investors that defendants were not "concerned that it [was] a quality issue" and was not particular to Allstate. Defendants' failure to mention Allstate's reduction in underwriting standards makes these statements misleading.

Rule 10b-5 makes it unlawful "to omit to state a material fact necessary in order to make the statements made in light of the circumstances in which they were made not misleading." Having elected to assert that Allstate's frequency trends were good and favorable compared to the prior year, and that any increase in claims frequency was due to factors beyond Allstate's control, defendants had a duty to do so in a manner that was not misleading; that is, by disclosing its reduction in underwriting standards. "If one speaks, he must speak the whole truth." Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1331 (7th Cir. 1995).

Plaintiffs further allege that on May 5, 2015, Allstate reported a second quarter of increasing claims frequency, but continued to blame external factors such as adverse weather for the increase. Then, during an earnings call the next day, Allstate's Vice President of Investor Relations stated that, "[b]ased on our analysis we continue to be comfortable with the quality of both our new and renewal business" and that defendants' "analysis also reinforces our conclusion that recent frequency fluctuations are due primarily to macroeconomic trends in weather." In addition to these statements, Wilson allegedly told investors that defendants felt that the increase was "everybody's problem," not just Allstate's. Further still, Winter allegedly stated that "[a]s we talked about last quarter actually, the frequency pressure is a combination of miles driven and weather." Winter then allegedly assured investors that defendants had conducted an extensive review of the increased claims frequency, and after "a very intense deep

7

dive into our business" to ensure "that these aren't our problems but are in fact external," defendants' "review showed that this trend is externally driven primarily by miles driven."

Defendants argue that their explanations regarding the extensive work they did to reach their conclusions, some of which were conflicting, would have caused a reasonable investor to understand that defendants' conclusions were somewhat uncertain, and their statements were therefore not misleading. Defendants' argument misses the point. Even if a reasonable investor understood defendants' conclusions to be uncertain, that understanding would have been based on incomplete information because defendants did not disclose that Allstate decreased its underwriting standards while simultaneously asserting that the increase in claims frequency was attributable to external factors.

In addition, many of defendants' alleged statements regarding the reason for the increase in claims frequency cannot be read to suggest that defendants' conclusions were uncertain or mere opinions. During the February 5, 2015, earnings call Winter allegedly attributed the increase to "miles driven and precipitation," assured investors that defendants were not concerned that it was a quality issue, and said that defendants had "analyzed this to death" before determining that the increase was due to external factors. During the May 6, 2015, earnings call Winter again allegedly assured investors that defendants had comprehensively analyzed internal and external data regarding the increase in claims frequency and told them, "So you look at all of that and you come to the conclusion that in fact this is an external trend." Even if defendants' statements were couched in uncertain terms such as "we believe" and "we think," and many were not, those statements, coupled with defendants' assurances that they had considered all possible reasons for the increase, would not have been understood by reasonable investors as uncertain.

See Omnicare, 135 S. Ct. at 1327 ("some sentences that begin with opinion words like 'I believe' contain embedded statements of fact").

### B. Scienter

In determining whether plaintiffs have adequately pled scienter, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, 551 U.S. at 322 (internal citations omitted). In doing so, the court asks "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 323 (emphasis supplied) (internal citations omitted). Additionally, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Id. Even still, "[t]he inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences." Id. at 324 (internal quotation marks omitted).

#### i. Wilson

Defendants argue that plaintiffs have failed to meet the PSLRA's heightened requirements because Wilson's stock sales are indicative of estate planning and investment diversification, they occurred long before Allstate's August 3, 2015, disclosures, Allstate's stock continued to rise after the sales, the two transactions did not result in the sale of a substantial portion of Wilson's overall holdings, and stock sales by only one manager do not give rise to a strong inference of scienter. Defendants are incorrect for a number of reasons.

9

First, Wilson's stock sales may very well be indicative of normal estate planning and investment diversification, but plaintiffs' claim that they are indicative of insider selling is both cogent and equally compelling, particularly in light of the other allegations in the complaint.

Second, the cases that defendants cite to support the assertion that the timing was not suspect are inapposite. In those cases, the court found no inference of scienter where stock sales preceded negative disclosures by "well over a year," In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1093 (9th Cir. 2002), by "[a] broad temporal distance," In re Party City Sec. Litig., 147 F. Supp. 2d 282, 313, (D.N.J. 2001), and by nine months. Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc., 2012 WL 1068761, at *13 (N.D. Ill. Mar. 29, 2012). Here, plaintiffs allege that two substantial stock sales took place two months and just over eight months before Allstate's negative disclosures.

Defendants' third argument, that Wilson's stock sales were not suspicious because Allstate stock continued to rise after the sales, deserves little discussion. The fact that Wilson failed to maximize his profits by perfectly timing his stock sales does nothing to undercut plaintiffs' claim of insider selling.

Defendants' fourth claim, that Wilson's stock sales did not represent a substantial portion of his holdings because Wilson continued to beneficially own millions of additional shares, fails for at least two reasons. First, this claim lies outside of the complaint and is not properly considered in deciding a 12(b)(6) motion to dismiss. Second, it raises a factual issue that is also not properly decided at this stage of the litigation.

Finally, even if defendants are correct that Wilson was the only manager to sell Allstate stock prior to the negative disclosures, a fact that plaintiffs contest, that sale "must be considered collectively," and its significance "depends on the entirety of the complaint." Tellabs, 551 U.S.

at 325. Plaintiffs' complaint read in its entirety gives rise to a strong inference of scienter, that is, one that is "at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324.

### ii. Winter

Defendants argue that plaintiffs have failed to meet the PSLRA's heightened requirements as to Winter because Wilson's stock sales cannot be the basis for an inference of scienter against Winter. Even still, plaintiffs have adequately alleged that Winter, who served as Allstate's CEO and President of Allstate Financial, then took over for Wilson as President in 2015, had direct involvement in and knowledge of Allstate's undisclosed plan to reduce its underwriting standards. See Desai v. Gen. Growth Properties, Inc., 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009) ("While a court cannot 'presume' scienter, a strong inference of scienter may still be credited where it is almost inconceivable that an individual defendant would be unaware of the matters at issue."). Plaintiffs also allege that Winter played an active role in earnings calls, during which he assured investors that the increased claims frequency was due to external factors. Additionally, plaintiffs allege that Winter admitted during an August 4, 2015, earnings call that the reduced underwriting standards contributed to the increased claims frequency, and that such an impact was expected. Given these admissions, plaintiffs' claim that Winter's statements attributing the increase in claims frequency to external factors were made with an intent to deceive investors is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

Defendants argue that plaintiffs' scienter argument should be disregarded as "fraud by hindsight" because it relies on a post-class statement. The court disagrees. Winter's post-class statement does not merely indicate that his assurances to investors that Allstate's increase in

11

claims frequency was due to external factors were incorrect in retrospect; it suggests that they were incorrect when made. According to plaintiffs Winter eventually admitted that Allstate's reduction in underwriting standards was expected to result in an increase in claims frequency, but he affirmatively ruled out any such impact throughout the class period while simultaneously failing to inform investors that the underwriting standards had been reduced at all. If Winter expected Allstate's reduction in underwriting standards to cause an increase in claims frequency, as his post-class statement suggests, his assurances that such an increase was due to external factors was false when made, not in retrospect, and his post-class statements are not "fraud by hindsight." Accordingly, plaintiffs have adequately pled scienter as to both Wilson and Winter.3

### C. Loss Causation

To plead loss causation, a plaintiff must allege that "it was the very facts about which the defendant lied which caused its injuries." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). Loss causation requires that plaintiffs allege that, "'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value.'" Ray v. Citigroup Global Markets, Inc., 482 F.3d 991, 995 (7th Cir. 2007) (quoting Caremark, 113 F.3d at 648-49 (7th Cir. 1997)). This requirement is the same standard as that required to allege common law fraud, and "does not require that the plaintiff plead that all of its losses can be attributed to the false statement of the defendant." Caremark, 113 F.3d at 649. Rather, plaintiffs must allege that they suffered economic loss when Allstate's share price fell after the relevant

---

[3] Defendants also argue that plaintiffs have failed to plead scienter because the allegations of plaintiffs' confidential informants "require a heavy discount." City of Livonia Employees' Ret. Sys. v. Boeing Co., 711 F.3d 754, 759 (7th Cir. 2013). Because the court does not rely on the allegations submitted by plaintiffs' confidential informants, it need not address this argument.

truth regarding Allstate's reduced underwriting standards became known in the marketplace. Broudo, 544 U.S. at 347.

Defendants argue that plaintiffs fail to meet this burden due to Allstate's partial disclosure of increased claims frequency in May 2015, and that plaintiffs' allegations suggest nothing more than normal market movements following a disappointing earnings report. The court disagrees. Plaintiffs allege that Allstate failed to attribute any of its increase in claims frequency to its reduced underwriting standards until it reported its 2015 second quarter financial results in a press release on August 3, 2015. Plaintiffs further allege that Allstate's stock price dropped more than 10% the next day, while the S&P 500 remained flat. Accordingly, plaintiffs have adequately alleged loss causation.

Consequently, the court concludes that Count I states a claim based on Allstate's alleged failure to disclose its reduced underwriting standards.

## II. Control Person Liability

Count II alleges control person liability against defendants Wilson and Winter. A control person claim under Section 20 of the Exchange Act must be based on an underlying violation of the securities laws or the rules promulgated under them. For the reasons discussed above, plaintiffs have adequately pled such a violation as to both Wilson and Winter. Additionally, to plead control person liability properly, plaintiffs must allege that "the control-person actually participated in, that is, exercised control over, the operations of the [controlled] person in general." Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 881 (7th Cir. 1992). The complaint alleges the following:

> Wilson and Winter had direct and supervisory involvement in the day-to-day operations of the Company and regularly spoke on behalf of the company. They exercised control over the operations

of Allstate and had the power to control the public statements about Allstate giving rise to the securities violations as alleged herein, and exercised the same.

Thus, Count II states a claim based on Wilson and Winter's failure to disclose Allstate's reduced underwriting standards, and their alleged impact on Allstate's claims frequency.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss (Doc. 54) is denied on all counts. Defendants are directed to answer the complaint on or before March 27, 2018. The parties are directed to prepare and file a joint status report using this court's form on or before April 2, 2018. This case is set for a report on status on April 11, 2018, at 9:00 a.m.

**ENTER:** February 27, 2018

_____
**Robert W. Gettleman
United States District Judge**