IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| IN RE THE ALLSTATE CORPORATION SECURITIES LITIGATION | ) ) ) ) | Case No. 16 C 10510 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION & ORDER

Plaintiffs Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California,[1] individually and on behalf of others similarly situated, brought a two count putative class action amended complaint against defendant Allstate Corporation ("Allstate"), its Chief Executive Officer ("CEO"), Chairman, and President from 2005 to 2015 Thomas Wilson, and the CEO and President of Allstate Financial Matthew Winter, who also took over for Wilson as President in 2015 (collectively, "defendants"). Count I alleges that defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Count II, brought only against Wilson and Winter, alleges control person liability under Section 20(a) of the Exchange Act. 15 U.S.C. § 78(a).

Previously, on February 27, 2018, the court denied defendants' motion to dismiss. Plaintiffs' claims are described in detail in that opinion, and need not be repeated here. See Carpenters Pension Trust Fund for Northern California v. Allstate Corp., 2018 WL 1071442, *2

---

[1] This case was originally brought by City of St. Clair Shores Police and Fire Retirement System. The court granted Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California's motion for appointment as lead plaintiffs on January 17, 2017, (Doc. 35) and revised the case caption accordingly. On September 12, 2018, the court granted lead plaintiff's motion to file an amended complaint adding Providence Employees Retirement System ("Providence") as a named plaintiff (Doc. 105). The caption has since been changed as indicated above.

(N.D. Ill. Feb. 27, 2018). Lead plaintiffs subsequently moved for class certification, and the court certified the following class: "[A]ll persons who purchased Allstate Securities between October 29, 2014 and August 3, 2015, inclusive and who were damaged thereby." See In re Allstate Corporation Securities Litigation, 2019 WL 1512268, *2 (N.D. Ill. Mar. 26, 2019).[2]

Defendants took an interlocutory appeal. The Seventh Circuit agreed with the court that plaintiffs had established the preliminary elements to invoke the Basic presumption.[3] In re Allstate Corporation Securities Litigation, 966 F.3d 595, 610 (7th Cir. 2020). However, the Seventh Circuit vacated class certification and remanded for further proceedings. Noting that class discovery was closed, the court of appeals directed this court to assess whether Allstate has rebutted the Basic presumption by a preponderance of the evidence, "taking into account plaintiffs' rebuttal reports and additional evidence challenging Allstate's showing." Id. The appellate court further instructed, "the district court must decide at the class stage the price impact evidence and plaintiffs' rebuttal." Id. at 601.

On remand, both parties submitted supplemental briefs. After conferring with the parties and reviewing the written submissions, the court declines to hold an evidentiary hearing. The class certification record is closed, and the parties have provided a robust written record. See id. at 610 ("Allstate here does not seek to introduce additional evidence; it only takes issue with whether and how that evidence was evaluated."). See also, Kleen Prod. LLC v. Int'l Paper, 306 F.R.D. 585, 590 (N.D. Ill. 2015), aff'd sub nom., 831 F.3d 919 (7th Cir. 2016) (holding that an

---

[2] On appeal, both parties requested that the court change the definition of the proposed class from "all persons who purchased Allstate Securities between October 29, 2014 and August 3, 2015, inclusive and who were damaged thereby" to "all persons who purchased Allstate common stock between October 29, 2014 and August 3, 2015, inclusive and who were damaged thereby." In re Allstate, 966 F.3d at 616.

[3] Basic, Inc. v. Levinson, 485 U.S. 224 (1988) established the fraud-on-the-market presumption that allows plaintiffs to avoid proving individual reliance upon fraudulent misrepresentations and omissions.

evidentiary hearing on class certification was unnecessary, "[g]iven the extensive paper record and completeness of the parties' briefing"). The court has reviewed the expert reports from defendants' expert (Allen) and plaintiffs' expert (Finnerty).[4] Upon due consideration of the arguments and evidence, the court finds that defendants have not rebutted the Basic presumption by a preponderance of the evidence. Consequently, the motion for class certification is granted.

## LEGAL STANDARD

To bring a securities fraud claim under Section 10(b) of the Exchange Act, plaintiffs must demonstrate that defendants made a material misrepresentation and that plaintiffs relied on it. In re Allstate, 966 F.3d at 604. Plaintiffs seeking class certification under Fed. R. Civ. P. 23(b)(3) must demonstrate: (1) that questions of law or fact common to class members predominate over questions affecting individual members; and (2) that a class action is superior to other available methods.

Plaintiffs bringing a securities fraud claim as a class are entitled to a presumption (the Basic presumption) that all plaintiffs relied on the defendants' misrepresentation—establishing commonality of the reliance element—"so long as [the misrepresentation] was reflected in the market price [of securities] at the time of the transaction." Basic v. Levinson, 486 U.S. 224, 247 (1988); Erica P. John Fund Inc. v. Halliburton Co., 563 U.S. 804, 813 (2011) (Halliburton I). "The Basic presumption of reliance is based on the efficient market hypothesis: 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'" In re Allstate, 966 F.3d at 605 (citing Basic, 486 U.S.

---

[4] The parties provided several other expert reports. However, for the purposes of price impact and class certification, the parties rely only upon testimony and reports from Allen and Finnerty. Plaintiffs briefly cite to deposition testimony from defense expert Gompers, but that testimony warrants no discussion by the court.

at 246). This presumption is, however, a rebuttable one: at the class certification stage, defendants can rebut the Basic presumption with evidence that defendants' misrepresentation had no price impact. In re Allstate, 966 F.3d at 609 (citing Halliburton Co. v. Erica P. John Fund Inc., 573 U.S. 258, 279-80 (2014) (Halliburton II)).

The Supreme Court has defined price impact as "the effect of a misrepresentation on a stock price." Halliburton I, 563 U.S. at 814. To demonstrate a lack of price impact, "the defense is entitled to make 'any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price'… This showing may include direct evidence demonstrating that the alleged misrepresentations had no impact on the stock price." In re Allstate, 966 F.3d at 609 (citing Basic, 486 U.S. at 248).[5] Defendants bear the burden of persuasion by a preponderance of the evidence when rebutting the Basic presumption. In re Allstate, 966 F.3d at 610 (citing Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc., 879 F.3d 474, 485 (2d Cir. 2018) cert. granted – S.Ct. –, 2020 WL 7296815).

## DISCUSSION

Here, plaintiffs have established the preliminary elements to invoke the Basic presumption of reliance. The court must now evaluate defendants' rebuttal evidence of a lack of price impact. The question for the court is rather straightforward: have defendants demonstrated, by a preponderance of the evidence, that the alleged misstatements had no price impact? Although the court need only discuss defendants' proffered evidence, the court begins

---

[5] While the court must evaluate evidence of price impact at the class certification stage, it must avoid forbidden merits inquiries such as materiality, Amgen, 568 U.S. at 467-68, and loss causation, Halliburton I, 563 U.S. at 804. In re Allstate, 966 F.3d at 605, 607 ("the district court must then make findings [on price impact] needed to decide class certification while resisting the temptation to draw even obvious inferences on topics that are forbidden at this stage: materiality and loss causation").

with a discussion of plaintiffs' initial showing to clarify plaintiffs' position. For the following reasons, the court concludes that defendants have not rebutted the Basic presumption by a preponderance of the evidence.

**1) Plaintiffs' Evidence of Price Impact**

Plaintiffs allege that, in 2013, Allstate implemented a new strategy to grow its auto insurance business by "softening" underwriting standards to attract new customers—in other words, insuring riskier drivers. Allstate had disclosed that the new strategy could lead to an increase in auto claims frequency but claimed it would monitor the potential risk. Plaintiffs allege that such a risk materialized almost immediately. According to plaintiffs, in SEC disclosures and investor conference calls, Allstate executives falsely stated that claim frequency trends had been "extremely favorable," when claims were in fact spiking. Later, when it was clear to the market that claim frequency had increased, plaintiffs allege Allstate misled the market by falsely attributing the increase to other factors such as the weather and miles driven, rather than the actual cause—the company's growth strategy of taking on riskier business.[6] On August 3, 2015, Allstate announced that the higher claims frequency it had experienced for three quarters had been fueled in part by the company's growth strategy. Allstate's stock immediately dropped 10%.

Plaintiffs claim that Allstate's misstatements had an impact on Allstate's stock price. Although the statements themselves did not inflate the stock price, plaintiffs allege that the statements maintained an already-inflated price. Plaintiffs accordingly invoke the "inflation

---

[6] Plaintiffs contend that Defendants made partial corrective statements in February 2015 and May 2015, in which Allstate admitted the increase in claims frequency but claimed the increase was caused by external factors. Plaintiffs further contend that the February 2015 and May 2015 statements led to small drops in Allstate's stock price (from $72.58 to $70.93 and $70.00 to $67.31, respectively) that further demonstrates price impact.

5

maintenance" theory: "'that the defendants' false statements caused the stock price to remain higher than it would have been had the statements been truthful,' even if the price itself does not change by a single cent." In re Allstate, 966 F.3d at 612 (citing Glickenhaus & Co. v. Household Int'l., Inc., 787 F.3d 408, 419 (7th Cir. 2015)). According to plaintiffs, Allstate's stock was artificially inflated because Allstate failed to disclose both the increase in auto-claim frequency and the fact that Allstate's growth strategy caused that increase.

Plaintiffs' invocation of the inflation maintenance theory is supported by the fact that the stock price dropped once the truth came out. The Seventh Circuit has acknowledged that "the best way to determine the impact of a false statement is to observe what happens when the truth is finally disclosed and use that to work backward, on the assumption that the lie's positive effect on the share price is equal to the additive inverse of the truth's negative effect. (Put more simply: what goes up, must come down)." Id. at 613; see also Ark. Teachers Ret. Sys. v. Goldman Sachs Group, Inc., 955 F.3d 254, 265 (2d Cir. 2020) ("This Court, like every Court of Appeals that has adopted the inflation-maintenance theory, has held that if a court finds a disclosure caused a reduction in a defendant's share price, it can infer that the price was inflated by the amount of the reduction.").

Plaintiffs have indeed demonstrated that Allstate's stock price dropped in the wake of the August 3, 2015 disclosure. From that, the court can infer that the stock price was inflated. Further, plaintiffs' expert, Finnerty, stated that the price decline on August 4, 2015 was likely caused by Allstate's corrective disclosures. Finnerty's report, at the very least, establishes a link between Allstate's corrective disclosures and the stock price decline.

**2) Defendants' Rebuttal Evidence of No Price Impact**

To rebut the Basic presumption, defendants submitted an expert report by economist Lucy Allen on price impact. The Allen report makes two primary claims about the nine alleged misstatements identified by plaintiffs. First, Allen found no statistically significant increase in Allstate's stock price following any of the alleged misrepresentations, from which she argues that the statements had no price impact. Second, Allen stated:

> [T]he alleged misrepresentation could not [i.e., as a matter of logic] have caused the price impact because Allstate's growth strategy, and the fact that the Company's growth strategy was expected to cause higher claims frequencies, was publicly disclosed in the Company's conference calls prior to the alleged Class Period, was covered in analyst reports on the Company published prior to and at the beginning of the alleged Class Period and, in an efficient market, would have already been impounded into Allstate's stock price.

In other words, Allstate's position is that, because the market at all times had correct information, the later statements made by Allstate could not have affected the price of Allstate's stock. The court finds several deficiencies with Allen's conclusions and will discuss each in turn.

### a) Allen's First Conclusion

Allen's first conclusion—that there was no statistically significant increase in Allstate's stock price following any of the alleged misrepresentations—fundamentally misunderstands plaintiffs' allegations and theory of the case. Plaintiffs do not allege that each of the nine statements caused Allstate's stock price to increase. As discussed above, plaintiffs rely on the inflation maintenance theory to allege that each statement maintained an already inflated stock price, and that the price would have dropped had Allstate revealed the truth.[7] As other courts

---

[7] Although defendants would place the burden of explaining any inflation in Allstate's stock price on plaintiffs, the Seventh Circuit has held that plaintiffs are not required to prove how the inflation was introduced into the price in the

7

have held, "the absence of price movement is insufficient to sever the link between the [corrective disclosure] and the subsequent stock price drop" when plaintiffs rely on an inflation maintenance theory. Ark. Teacher Ret. Sys., 955 F.3d at 262. That is precisely what plaintiffs do here. Arguments that the stock price did not increase after the statements are therefore irrelevant.

Allen erroneously conflates the lack of an increase with the lack of inflation. Her first argument consequently fails to rebut the Basic presumption in light of plaintiffs' inflation maintenance theory.

### b) Allen's Second Conclusion

Allen's report concludes that there was no price impact, and there could be no price impact, because the statements revealed no new information to the market. This conclusion is, as the Seventh Circuit put it, "difficult for us to square with the 10% price drop on August 4, 2015." In re Allstate, 966 F.3d at 613. Allen offers little explanation for that price drop in her report. Allen conceded in her deposition that she did not perform any empirical testing or disaggregation analysis to determine what caused Allstate's stock price to drop on August 4, 2015.

This failure is fatal to defendants' attempts to defeat class certification. At this stage, it is defendants' burden to demonstrate a lack of price impact. This is difficult to do in the face of allegations that the stock price dropped following a corrective disclosure. To prove lack of price impact, defendants "must show by a preponderance of the evidence that the entire price decline on the corrective-disclosure dates was due to something other than the corrective

---

first place. Glickenhaus, 787 F.3d at 418; see also In re Allstate, 966 F.3d at 612.

disclosures." Ark. Teach Ret. Sys., 955 F.3d at 271. Courts have routinely required defendants to perform some sort of disaggregation analysis or event study to prove that the stock price decline was caused by some other factor. Id. (affirming district court's holding that defendant failed to meet its burden of persuasion when defendant's expert failed to conduct event studies to explain stock price drop); In re CenturyLink Sales Practices and Securities Litig., -- F.R.D. --, 2020 WL 5517483, at *13 (D. Minn. Sept. 14, 2020) (finding defendant failed to rebut Basic presumption by showing lack of price impact when defendant's expert "did not attempt to quantify the amount of the price drop that was caused by other factors"); Plymouth Cnty. Ret. Sys. v. Patterson Co. Inc., 2020 WL 5757695, at *13 (D. Minn. Sept. 28, 2020) (defendants' claim that the price declines after defendants' disclosures were due to other factors was insufficient to rebut Basic presumption).

Allstate's stock price dropped 10% after its August 3, 2015, disclosure. Plaintiffs use this fact to infer causation and price impact, and Finnerty's model demonstrates as much. Allen does little to explain this drop, operating as if it did not occur because it could not occur. Without a disaggregation analysis or event study to offer an alternative explanation for the decline in Allstate's stock price, defendants cannot rebut the Basic presumption.

Defendants' briefing suggests that the stock price drop was solely attributable to disappointing quarterly results, not Allstate's admission that its growth strategy caused an increase in claims frequency. But "merely suggesting that another factor also contributed to an impact on a securities price does not establish that the fraudulent conduct complained of did not also impact the price of the security." In re CenturyLink Sales Practices and Securities Litig., -- F.R.D. --, 2020 WL 5517483, at *13 (D. Minn. Sept. 14, 2020) (citing Waggoner v. Barclays PLC, 875 F.3d 79, 105 (2d Cir. 2017)). Given the lack of an independent event study or

9

disaggregation analysis, defendants have failed to provide any support for their argument. Consequently, Defendants have failed to persuade the court of a lack of price impact.

Plaintiffs point to several additional shortcomings in Allen's report. Although they are minor compared to Allen's lack of a disaggregation analysis, the court finds that these shortcomings tip the scales in plaintiffs' favor. First, plaintiffs argue that Allen's conclusion are entirely based on analyst commentary that merely parroted Allstate's misleading statements. Indeed, many of the cited analyst reports and commentary simply quoted Allstate's explanation without providing their own analysis.

Second, plaintiffs accuse Allen of disregarding analyst commentary that contradicts her conclusion. In his rebuttal report, Finnerty identified at least three analyst reports from major sources that attributed the increase in claims frequency to Allstate's growth strategy—reports that Allen did not cite or analyze.[8]

Finally, plaintiffs repeatedly argue that Allen misunderstood the allegations of the complaint. Plaintiffs note that Allen tested for whether Allstate revealed its new underwriting strategy. Indeed, Allen concluded that the corrective disclosures revealed no new information about Allstate's underwriting standards. But plaintiffs do not fault Allstate for failing to disclose its underwriting standards. Plaintiffs fault Allstate for failing to disclose an actual increase in claims frequency and that this increase was caused by the new underwriting standards as opposed to the weather or miles driven.[9] Allen did not test for whether the market knew of the actual increase in claims or whether the market knew the increase was caused by the

---

[8] At least one of the reports cited by Finnerty identified the increase in claims frequency as an Allstate-only problem, contradicting defendants' claim that Allstate experienced an industry-wide problem.
[9] Plaintiffs and defendants argue much about the difference between identifying a potential risk and disclosing that the risk has materialized.

10

underwriting standards despite Allstate's statements to the contrary. Allen's report is simply not responsive to the allegations in the complaint.

Accordingly, the court finds that defendants have not met their burden of rebutting the Basic presumption. Their expert report fails to convince the court that there was no price impact.

### c) Improper purpose

In Halliburton II, the Supreme Court stated that "defendants may introduce price impact at the class certification stage, so long as it is for the purpose of countering a plaintiff's showing of market efficiency, rather than directly rebutting the [Basic] presumption." 573 U.S. at 280. The Seventh Circuit cited this passage in its opinion remanding this case. In re Allstate, 966 F.3d at 608. Few cases have engaged with this distinction; but to the extent this is the current state of the law, Allen's report is improperly offered. Allen's report assumes an efficient market; she does nothing to rebut it. In fact, Allen relies on the presence of an efficient market to argue that Allstate's disclosure could not have caused the stock price to drop:

> I find that the alleged misrepresentations could not have had a price impact because Allstate's growth strategy…was publicly disclosed in the Company's conference calls prior to the alleged Class Period, was covered in analyst reports on the Company published prior to and at the beginning of the alleged Class Period and, in an efficient market, would have already been impounded into Allstate's stock price.

(emphasis added).

In other words, Allen concludes that, because Allstate operated in an efficient market, the statements could not have affected the stock price because the market already knew about Allstate's underwriting strategy. Far from rebutting plaintiffs' showing of an efficient market, Allen agrees—or at least accepts for the purposes of her argument—that Allstate was trading in

11

an efficient market. It is thus difficult for the court to square Allen's report with the purpose-based inquiry identified in Halliburton II.

### d) Truth-on-the-market defense

Finally, it appears to the court that Allen's report and defendants' briefing presents a truth-on-the-market defense, "which Amgen held may not be decided on class certification." In re Allstate, 966 F.3d at 602. Allen's second conclusion is that the market already knew that Allstate's growth strategy would likely result in increased claims frequency, so the "truth" could never have been disclosed and could never have affected the price. Defendants briefing largely focuses on the fact that the identified statements could not have been corrective because the market already knew the truth. Defendants fail to explain how this conclusion is anything but a truth-on-the-market defense. See, e.g., Karinski v. Stamps.com, Inc., 2020 U.S. Dist. LEXIS 209256, at *18-19 (C.D. Cal. Nov. 9, 2020) (defendants' argument that there could be no corrective disclosure with respect to the alleged misstatements because the market commentators already new the truth amounted to a truth-on-the-market defense not properly considered at the class certification stage). And an argument that "news of the [truth] credibly entered the market and dissipated the effects of the misstatement…is a matter for trial." Amgen, 568 U.S. at 482. Even if the court did not view defendants' arguments as a truth-on-the-market defense, their arguments regarding price impact would still fail for the reasons explained above.

\* \* \*

The Seventh Circuit directed the court to determine whether defendants have demonstrated, by a preponderance of the evidence, that the alleged misstatements had no price impact. Plaintiffs have offered evidence demonstrating the price impact of the alleged misstatements. In response, defendants offered an expert report that is unresponsive to

plaintiffs' allegations and of questionable propriety. Mindful of the Seventh Circuit's instructions and in view of the evidence before it, the court concludes that defendants have failed to rebut the Basic presumption by a preponderance of the evidence. Consequently, the motion for class certification is granted.

## CONCLUSION

For the reasons set forth above, the court concludes that defendants have failed to meet their burden of proof to rebut the Basic presumption. The court therefore grants the motion for class certification and certifies the following class: all persons who purchased Allstate common stock between October 29, 2014 and August 3, 2015, inclusive and who were damaged thereby.

**ENTER:** **December 21, 2020**

_____
**Robert W. Gettleman**
**United States District Judge**