**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE THE ALLSTATE CORPORATION SECURITIES LITIGATION | Case No. 16-cv-10510<br><br>Hon. Robert W. Gettleman |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'MOTIONS *IN LIMINE* Nos. 1-6

Lead Plaintiffs, Carpenters Pension Trust Fund for Northern California, Carpenters Annuity Trust Fund for Northern California, and Class Representative City of Providence (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motions *in Limine* Nos. 1-6 ("Defs.' Br.") for the exclusion of specific evidence and argument from the upcoming trial in this matter.

## I. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO 1: The Court Should Exclude Evidence and Argument that Challenged Statements Were False and Misleading Based on the Alleged Nondisclosure of Intra-Quarter Information.

Defendants seek to exclude evidence or argument that any of Defendants' public statements were false and misleading based on the fact that Defendants did not include information specific to the intra-quarter financial performance of The Allstate Corporation ("Allstate" or the "Company"). Defs.' Br. at 3. Defendants' motion should be denied because it is procedurally improper and misconstrues the Court's summary judgment order (the "Summary Judgment Order" or "SJ Order"). *See* ECF No. 492.

Defendants' motion is procedurally improper because, in essence, it seeks the dismissal of a claim, not the exclusion of evidence. In their summary judgment motion, Defendants argued at length that they had no duty to report on a quarter-in-progress. *See* MSJ at 20-22. Specifically, Defendants argued that "Mr. Winter's October 30 comments and Mr. Wilson's December 9 statement were focused on the past." *See* MSJ at 20; *see also* Reply at 3-7 (same).

Defendants' attempt at a second bite of the summary judgment apple should be rejected. *See Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 10609876, at *1 (N.D. Ill. Mar. 21, 2018) ("In large measure, this motion reasserts arguments already addressed in defendants' motion for summary judgment and motion to reconsider. The court will not revisit those arguments here."); *see also GuideOne Mut. Ins. Co. v. Berghaus Organ Co.*, No. 07 C 50037,

2011 WL 1402869, at *5 (N.D. Ill. Apr. 13, 2011) ("Although [the] current motion in limine was not considered as part of the court's summary judgment decision, the court has now reviewed the motion and finds that the arguments contained therein are substantially similar to the arguments raised . . . in [the] motion for summary judgment. Thus, the court finds no basis to alter its decision . . . and denies [the] current motion in limine . . . .").[1] The parties represented to the Court that this case is trial ready (*see* Ex. A (August 24, 2022 Hearing Tr.) at 4:2-18) and they have already submitted their proposed pretrial order (ECF No. 517).

Moreover, Defendants' motion is not consistent with the Court's Summary Judgment Order, as Defendants claim. Indeed, it directly contradicts that Order. While the Court held that Defendants did not have a duty to disclose information about Allstate's intra-quarter claims frequency experience during the Company's October 30, 2014 earnings call because, during that call, "Allstate spoke only about its third-quarter results," the Court held there was a question of fact for the jury as to whether Defendants had a duty to disclose information about Allstate's intra-quarter claims frequency experience during a December 9, 2014 conference, stating:

> The court disagrees with Allstate, however, about the December 2014 statements. During the Goldman Sachs Investor Conference, when an analyst asked defendant Wilson about Allstate's auto rates and profitability, Wilson stated, '[s]o I feel good about auto insurance in general terms of profitability. It doesn't mean frequency won't tick up, or we won't mess up in some State, or we don't mess up in some channel.' Plaintiffs argue that it was misleading for Wilson to warn that Allstate's

[1] Defendants' motion is also a procedurally improper attempt at an end run around the standard for reconsideration—a high standard that Defendants cannot meet. *Dalonno C. Johnson, Plaintiff, v. Soo Line R.R. Co.*, No. 17-CV-7828, 2023 WL 199338, at *1-2 (N.D. Ill. Jan. 17, 2023) ("To prevail on a motion to reconsider, the movant must establish a manifest error of law or fact or present newly discovered evidence . . . . And reconsideration is not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion.") (citations and internal quotations omitted).

> frequency might 'tick up' when he knew that Allstate had already experienced a frequency increase. Further, unlike the October statement, it is not clear that Wilson was speaking only about the third quarter. Instead, Wilson appears to have been addressing the potential trends with claims frequency, including those for current quarter. Having chosen to address the potential frequency increase, Wilson was required to tell 'the whole, material truth.' A reasonable jury could very well find the December statement to be a misleading omission.

SJ Order at 8-9 (quoting *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F.Supp.3d 952, 963 (E.D. Va. 2020)); *see also id.* at 8 (reasoning that Rule 10b-5 proscribes "omissions that render affirmative statements misleading; thus, incomplete disclosures, or 'half-truths,' implicate a duty to disclose whatever additional information is necessary to rectify the misleading statements") (quoting *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989)).

For this reason alone, the Court must reject Defendants' request for a blanket exclusion of all evidence or argument that any of Defendants' public statements were false and misleading because Defendants did not include information specific to Allstate's intra-quarter financial performance. Such evidence is indisputably relevant to the December 9, 2014 misstatement, including any evidence of Defendants' knowledge regarding Allstate's intra-quarter claims frequency experience before December 9, 2014. *Navarrete v. Madison Cnty.*, No. 17-CV-347-SMY, 2021 WL 2374350. at *1 (S.D. Ill. June 10, 2021) (holding that the moving party must demonstrate that "evidence is inadmissible on any relevant ground, for any purpose") (citations and internal quotations omitted).

Although Defendants' definition of "information specific to Allstate's intra-quarter financial performance" is vague and ambiguous—which is yet another independent reason for rejecting their motion—such evidence may include the following:

- [redacted]

[redacted] *See* PEx. 23.[2]

- [redacted] *See* Ex. B [redacted]

- During Allstate's earnings call with analysts and investors on February 5, 2015, when the Company first publicly admitted that it had experienced a claims frequency increase, Defendant Wilson stated that Defendant Winter had "spent untold number of hours over the last, really, 3 months since ***we saw a tick-up in October***" analyzing the increase. DEx. 35 (February 5, 2015 earnings call transcript) at 11.

[redacted]

- [redacted][4]

---

[2] Herein, all emphasis is added unless otherwise indicated. All citations herein to "DEx. __" or "PEx. __" refer to the parties' exhibits from their respective summary judgment submissions.

[3] [redacted]

[4] Defendants' reliance on *In re AT&T/DirecTV Now Securities Litigation*, 480 F. Supp. 3d 507, 515 (S.D.N.Y. 2020), is misplaced. In that case, the plaintiffs argued that the defendants had a duty to

Moreover, all of this evidence must be read in context of the public assurance that Mr. Wilson gave when speaking about Allstate's claims frequency on the Company's February 6, 2014 earnings call, that, in light of the Company's growth, "we're monitoring it closely and we'll stay out in front of it." DEx. 8, February 6, 2014 earnings call transcript, at 16.

Finally, Defendants argue that Plaintiffs should be barred from offering evidence or argument that alleged misstatements in Allstate's third quarter 2014 press release and Form 10-Q filed on October 29, 2014 (the "October 2014 10-Q") were false and misleading because they "did not disclose information concerning the quarter then in-progress." Defs.' Br. at 4. In other words, Defendants now improperly attempt to extend the Court's Summary Judgment Order to apply to additional misstatements. But unlike the October 30, 2014 misstatement, Defendants' motion to dismiss did not specifically address these misstatements, and the Court did not dismiss them. *See, e.g.*, *Castronovo v. Cnty. of Winnebago*, No. 11 C 50046, 2013 WL 5486774, at *2 (N.D. Ill. Oct. 2, 2013) (denying motion *in limine* where the moving party failed to request summary judgment on the issue); *GuideOne*, 2011 WL 1402869, at *5 (denying motion *in limine* that is "substantially similar" to the arguments raised in the motion for summary judgment).[5]

---

disclose two separate metrics used by the defendant company to measure growth. *Id.* at 529 (denying the plaintiffs' assertion that defendants should be required to disclose "churn," which could account for fake accounts, in addition to subscription totals that did not break out the actual number of new subscribers). Here, in contrast, Allstate consistently publicly reported and discussed the Company's claims frequency. Thus, Defendants had a duty to disclose the "dramatic" intra-quarter increase when they "chose to address" Allstate's claims frequency results. *See* SJ Order at 9. ("Having chosen to address the potential frequency increase, Wilson was required to tell 'the whole, material truth.' (quoting *Cambridge Ret. Sys.*, 496 F.Supp.3d at 963)).

[5] Even if the alleged misstatement in Allstate's October 2014 10-Q related solely to the Company's third-quarter results, Plaintiffs allege that Defendants improperly failed to disclose Allstate's claims frequency increase under Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303"). *See Flynn v. Exelon Corp.*, No. 19 C 8209, 2021 WL 1561712, at *8 (N.D. Ill. Apr. 21, 2021), *motion to certify appeal denied*, No. 19 C 8209, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022) (Item 303 requires that a registrant's Form 10-Q disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on new sales or revenues or income from

Indeed, in their trial brief, Defendants admit that the October 29, 2014 misstatements at the start of the Class Period must be tried to the jury, stating:

> Plaintiffs assert that the Class Period began on October 29, 2014, and the Court certified a class with that start date. ECF No. 348 at 13. Defendants believe ***the evidence at trial*** will show that the Class Period is properly regarded as beginning on December 9, 2014, at the earliest. Based on the reasoning in the Court's summary judgment ruling, none of Defendants' statements before that date can provide a basis for liability under the securities laws. *See* ECF No. 492 at 8–9. Defendants will bring an appropriate motion for partial class de-certification as to the beginning of the class period ***upon demonstrating this at trial***.

ECF No. 503 at 1.

Thus, the Court should deny Defendants' Motion *in Limine* No. 1.[6]

## II. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO 2: The Court Should Exclude Evidence and Argument that Challenged Statements Were Misleading Because of a Duty to Disclose "Known Trends" under Item 303.

Defendants seek to exclude evidence and argument that the misstatements at issue were misleading because of a duty to disclose under Item 303. Defs.' Br. at 6-7. But again, Defendants' motion is procedurally improper because it dresses up summary judgment arguments as motions *in limine*. *See* Section I, *supra*.

The Court already considered and explicitly rejected one of Defendants' arguments concerning Plaintiffs' Item 303 claim. In their summary judgment motion, Defendants argued that Plaintiffs' Item 303 claim should be dismissed because Allstate accurately reported its claims

---

continuing operations."), *motion to certify appeal denied*, No. 19 C 8209, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022); *see also* Plaintiffs' response to Defendants' Motion in Limine No.2, *infra*.

[6] If the Court accepts Defendants' invitation to revisit summary judgment with respect to the October 2014 misstatements and omissions, Plaintiffs request additional summary judgment briefing regarding the October 30, 2014 misstatement the Court dismissed in its Summary Judgment Order because there is at least a question of fact as to whether Defendants "spoke only about its third-quarter results" during Allstate's earnings call that day. Indeed, during that same call, Defendants discussed their "long-term history of managing our margins well and keeping an eye on both frequency and severity and reacting accordingly." DEx. 19 at 11.

frequency for that quarter. *See* Defs.' Br. at 7. The Court's Summary Judgment Order explicitly rejected that argument, stating:

> The court can easily dispose of the first argument because it misconstrues plaintiffs' claims. Plaintiffs are not alleging that defendants incorrectly reported Allstate's Q3 results. Rather plaintiffs are alleging that defendants failed to disclose that they had already experienced an increase in claims frequency.

SJ Order at 7.

Defendants' motion also argues—for the first time—that Plaintiffs' Item 303 claim is "misleading and prejudicial" because Item 303 requires only that interim statements disclose "material changes in . . . *previously reported* known trend[s]" as opposed to "any known trends[.]" Defs.' Br. at 7 (emphasis in original). But that ship has sailed, as Defendants could have but failed to assert this argument in their motion to dismiss the Complaint or their motion for summary judgment. *See, e.g.*, *Castronovo*, 2013 WL 5486774, at *2 (denying motion *in limine* where the moving party failed to request summary judgment on the issue); *GuideOne*, 2011 WL 1402869, at *5 (denying motion *in limine* that is "substantially similar" to the arguments raised in the motion for summary judgment).

In addition, Defendants' motion should be rejected because it relies on non-binding authority in which two outlier courts from other jurisdictions honed in on the differences between two provisions within Item 303. Defs.' Br. at 7 (citing *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1118 n.9 (N.D. Cal. 2003) (comparing 17 C.F.R. § 229.303(a) to 17 C.F.R. § 229.303(b)), and *In re Galena Biopharma, Inc. Sec. Litig.*, 336 F. Supp. 3d 378, 390 (D.N.J. 2018) (same)).

However, courts in this District have repeatedly held that Item 303 requires that a registrant's Form 10-Q disclose "any known trends or uncertainties." *See, e.g.*, *Flynn*, 2021 WL 1561712, at *8; *Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 WL 564222, at *5–8

(N.D. Ill. Feb. 5, 2020) (holding that a registrant's failure to disclose a "known trend" in its Forms 8-K and 10-Q violated Item 303).

Thus, the Court should deny Defendants' Motion *in Limine* No. 2.

## III. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO 3: The Court Should Exclude Evidence and Argument Offered to Prove Falsity or Scienter Based on Later Statements That Allstate Was "Tightening Underwriting Standards."

Defendants seek to exclude evidence and argument regarding Allstate's "tightening underwriting standards" based on the flawed premise that Plaintiffs will utilize this as evidence of a subsequent remedial measure barred by Federal Rule of Evidence 407 ("Rule 407"). *See* Defs' Defs.' Br. at 8-9. Defendants' motion should be denied because Allstate's admission that it would have to tighten underwriting standards was not a subsequent remedial measure and because it mischaracterizes Plaintiffs' intended use of this evidence.

As background, Plaintiffs allege that, before the Class Period, Allstate implemented an aggressive growth strategy in an effort to expand its auto insurance business. SJ Order at 2. In order to do so, Allstate implemented numerous growth initiatives, including pricing initiatives called "Broaden the Target" ("BTT") and "Complementary Group Rating" ("CGR"), and the Company loosened its underwriting standards in connection with those initiatives. *See id.* Defendants assured investors they would closely monitor any increases in claims frequency resulting from this growth strategy. *Id.* Despite this assurance, Defendants failed to disclose the material fact that Allstate began to experience a dramatic increase in claims frequency as early as September 2014. *Id.* Then, in February 2015, when Allstate first revealed the increase, Defendants misled investors about whether Allstate's growth strategy had caused it. *Id.* at 3-4. Specifically, Defendants repeatedly and adamantly denied that the increase was attributable to Allstate's "growth" or the Company's "quality of business." *Id.* Rather, Defendants misdirected by

attributing the increase to external factors like the number of miles driven by Allstate's customers or the weather. *Id.* Thus, the gravamen of this case is that Defendants initially failed to disclose Allstate's frequency increase and then falsely stated they knew the cause of the increase when they did not. *See id.* at 1-2.

Importantly, Plaintiffs do not allege that Defendants engaged in wrongdoing by lowering Allstate's underwriting standards. The "injury or harm" alleged here is not the lowering of Allstate's underwriting standards such that a later "tightening" of those standards would serve as subsequent remedial conduct. Rather, Plaintiffs allege an injury based on monetary loss resulting from the revelation of the truth concealed by Defendants' misstatements and omissions regarding Allstate's claims frequency increase.

Therefore, Defendants' argument that Plaintiffs "are seeking to introduce evidence that they believe was remedial as proof of liability" (Defs.' Br. at 9) is a mischaracterization of Plaintiffs' claims and Defendants' authorities are inapt.[7]

Even assuming *arguendo* that Defendants did not mischaracterize Plaintiffs' allegations, Rule 407 still would not apply here. Rule 407 applies to evidentiary conduct, not party admissions or testimony. *Bussean v. Habco Inc.*, No. 98 L 623, 2003 WL 24179471, at *2 (Ill. Cir. Ct. May 23, 2003) (holding that "an admission" is "proper evidence" to be admitted and not subject to Rule 407).

Thus, the Court should deny Defendants' Motion *in Limine* No. 3.

---

[7] *Pugh* and *Higginbotham* were both decided at the motion-to-dismiss stage, and both are factually distinct. In those cases, the alleged harm arose directly from the defendants' conduct that was later remediated. *See Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 760 (7th Cir. 2007). Here, in contrast, Plaintiffs will seek to admit relevant evidence regarding Allstate's underwriting standards and how they were changed throughout the Class Period, but Plaintiffs do not allege that those changes directly caused economic harm to Plaintiffs or other members of the Class.

## IV. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO 4: Evidence or Argument About Defendants' Financial Condition Raises a Danger of Unfair Prejudice That Substantially Outweighs Any Probative Value it May Have.

Defendants seek to exclude evidence regarding Defendants' wealth or financial condition. Defs.' Br. at 9-10.

Plaintiffs do not oppose Defendants' request to exclude evidence concerning the financial condition of Allstate and/or the Company's ability to pay. As noted in Plaintiffs' motions *in limine*, evidence of aggregate damages should be excluded (*see* ECF No. 513 at 3-4). Accordingly, it makes sense that Allstate's ability to pay an aggregate damages award should also be excluded.

However, evidence of the Individual Defendants' wealth should not be excluded. Courts routinely find that "evidence of the individual defendants' compensation and ownership of [defendant's] stock during [the relevant period]" is relevant and admissible. *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST, 2021 WL 1232451, at *11 (N.D. Cal. Mar. 31, 2021) (collecting cases). Specifically, the Individual Defendants' stock ownership and compensation is relevant to motive and scienter. *Id.*

For example, Defendant Wilson's personal need for the proceeds from his stock sale—or lack thereof—is directly relevant to the jury's determination of any motive that may inform scienter in this action. Moreover, the relevance of this evidence far outweighs the minimal risk of prejudice as jurors will likely already have some notion regarding the wealth of C-suite executives at a Fortune 100 company. Defendants do not contradict these clear bases of relevance and therefore do meet the high burden of showing that this evidence is inadmissible for any purpose.[8]

[8] Defendants cited cases consider this issue in the context of punitive damage awards. But, punitive damages are not at issue in this Action. Outside the context of punitive damage awards, "there is currently no prohibition against the introduction of such evidence." *Smith v. Waste Mgmt. of Ill., Inc.*, No. 05-1284, 2008 WL 11366184, at *3 (C.D. Ill. July 24, 2008).

Thus, the Court should deny Defendants' Motion *in Limine* No. 4.

## V. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 5: Plaintiffs Abandoned Any Theories of Liability Not Contained in their October 6, 2022 Statement of Issues Furnished under LR 16.1(6)(b).

Defendants argue that the Court should prevent Plaintiffs from "pursuing any claims or theories of liability that Plaintiffs omitted from their Statement of Issues." Defs.' Br. at 10. This motion should be denied because Defendants were clearly on notice of Plaintiffs' "claims and theories of liability" based on their Statement of Issues and/or the proposed pretrial order, including Plaintiffs' proposed verdict form.

Defendants' motion ignores the fact that both parties expressly reserved their rights to revise or supplement their Statement of Issues. *See* Ex. C at 2 ("Plaintiffs furnish this statement of issues [] pursuant to the Court's Standing Order Establishing Pretrial Procedure.[] Plaintiffs reserve the right to revise or supplement their Statement."); Ex. D at 2 ("Defendants reserve the right to revise or supplement this Statement."). Plaintiffs subsequently listed the misstatements they intend to pursue at trial in the first draft of their proposed verdict form that was first produced to Defendants in an email on November 4, 2022. *See* Ex. E. Those same misstatements are listed in the proposed draft verdict form that Plaintiffs submitted to the Court. *See* ECF No. 517-12.[9]

Defendants argue that Plaintiffs abandoned their Item 303 claim with respect to Allstate's October 2014 10-Q. *See* Defs.' Br. at 10 ("Allegations that Item 303 of Regulation S-K required disclosures for quarters in addition to the third quarter 2014, ECF No. 106, ¶¶ 61–62, 80, 87"). Not so. Plaintiffs' Statement of Issues explicitly referenced Plaintiffs' Item 303 claim. *See* Ex. C at 4 ("The October 2014 10-Q improperly failed to disclose Allstate's claims frequency increase .

[9] Specifically, Plaintiffs' proposed verdict form included the following allegations that Defendants now attempt to exclude: (1) Plaintiffs allegations concerning Allstate's Form 10-K for 2014 (Ex. E at 6); and (2) Plaintiffs allegations concerning the Allstate's May 2015 Form 10-Q (Ex. E at 7).

. . . Having discussed the Company's 'comprehensive plan to generate profitable growth,' [Defendants'] had a duty to disclose Allstate's claims frequency increase under Item 303[.]").

Similarly, Defendants argue that Plaintiffs abandoned their argument that Allstate's May 5, 2015 press release (the "May 5, 2015 Press Release") constituted a partial corrective disclosure. *See* Defs.' Br. at 11 ("A claim based on alleged statements in a May 2015 press release, *id.* ¶¶ 81–84."). Plaintiffs' Statement of Issues inadvertently labeled the May 5, 2015 Press Release as "Allstate's May 2015 Earnings Call" in footnote six of their Statement of Issues. *See* Ex. C at 8 n.6 (explaining that the Company's disclosure of a second consecutive quarter of increased claims frequency constituted a partial corrective disclosure). Defendants cannot argue this inadvertent error prejudices them because they have been aware of Plaintiffs' allegation regarding that corrective disclosure throughout this litigation, as it has been the subject of motion practice and expert testimony. *See, e.g.*, MTD at 29 n.8 (referencing the "May 5, 2015 disclosure"); *see also* MSJ at 4 (referencing Plaintiffs' allegations that "Allstate's stock price dissipated when the 'truth' about Allstate's claim frequency was revealed in Allstate's disclosures of results for Q4 2014, ***Q1 2015***, and Q2 2015.") (emphasis added).[10]

Thus, the Court should deny Defendants' Motion *in Limine* No. 5.

## VI. PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO 6: The Court Should Bar Plaintiffs from Offering Certain Types of Evidence and Argument Related to Allstate Employees' Stock Trades.

Defendants seek to exclude evidence or argument concerning Defendant Wilson's stock sales. Defs.' Br. at 11-13. But Defendants' motion should be denied because they fail to meet

[10] For the avoidance of doubt, Plaintiffs do not intend to pursue the following alleged misstatements at trial: (1) the October 30, 2014 earnings call misstatement dismissed in the Summary Judgment Order (Compl. ¶¶64-65); (2) Shebik's misstatement during the December 2014 Goldman Sachs Investor Conference (*id.* ¶¶ 69-70); and (3) the May 5, 2015 Press Release misstatement (*id.* ¶¶ 81-82, 84). However, Plaintiffs do not waive or abandon, and they explicitly reserve their rights to assert, any other misstatement, omission, claim, or legal theory alleged in the Complaint.

their burden of proving that such evidence is not admissible "for any purpose." *Navarrete*, 2021 WL 2374350, at *1.

### A. Defendant Wilson's Trading Is Relevant to Motive and Scienter

Defendants' motion narrowly focuses on the fact that Plaintiffs do not allege an "insider trading" claim based on a violation of Section 20A of the Exchange Act of 1934, and therefore Plaintiffs are not required to show "that Mr. Wilson, or any other Allstate officer, director, or employee, defrauded them by selling them stock while in possession of material non-public information." Defs.' Br. at 13.[11]

But Plaintiffs may introduce evidence of Defendant Wilson's November 2014 stock sales for numerous relevant purposes. For example, Defendant Wilson's stock sales are highly relevant to scienter. The Complaint alleges Defendant Wilson's stock sales as an indicium of scienter. ECF No. 106 ("Compl.") ¶¶ 123-125. In fact, the Complaint alleges that the market took notice of these unusual trades and had questions as to Wilson's motive for them. Compl. ¶ 125 ("Crain's Chicago Business published an article on December 3, 2014, reporting that Wilson's options weren't set to expire until 2019," which "raises questions as to why Wilson cashed them out now.").

Moreover, Plaintiffs contend that the magnitude and timing of Wilson's exercise of a stock option that was not set to expire until five years later, in 2019, was unusual. SJ Order at 10. This was the subject of dueling expert reports by the parties' experts. ECF Nos. 388-1, 388-2, 388-3.

Plaintiffs intend to demonstrate that Defendant Wilson's early exercise of that option is evidence of motive and his knowledge of Allstate's claims frequency increase.

---

[11] While Defendants focus their argument on Defendant Wilson, their motion contemplates "any other Allstate director, officer, or employee." Plaintiffs are entitled to introduce evidence or argument of insider trading by any corporate insider for the same reasons stated herein.

### B. Whether Defendant Wilson's Duty May Be Imputed to Other Defendants Is an Issue that Cannot Be Resolved in a Motion *in Limine*

Defendants Allstate and Winter (not Defendant Wilson) separately argue that evidence or argument that to the extent Defendant Wilson had a duty to publicly disclose information and any argument that this duty be imputed to Allstate or Defendant Winter should be excluded.

It is black letter law that Defendant Wilson's knowledge and conduct are imputable to the corporate defendant, Allstate. *See Puskala v. Koss Corp.*, 799 F. Supp. 2d 941, 947-48 (E.D. Wis. 2011). "[T]he scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b–5 when those senior officials were acting within the scope of their apparent authority." *Id*.

Further, Allstate has never raised any argument that Defendant Wilson engaged in *ultra vires* conduct. Indeed, they have always maintained and continue to maintain that Wilson followed corporate policy with respect to his insider sales. *See* ECF No. 503 at 11.

With respect to Defendant Winter, Defendants' motion presents a classic example of a situation in which "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). To exclude evidence on this basis now would be premature and deprive Plaintiffs of any opportunity to present facts and argument regarding whether and to what extent Defendant Wilson's actions – or lack thereof – may be imputed to Winter. If warranted, Winter may be entitled to a limiting instruction to the jury—one that he has not yet proposed—and not a wholesale exclusion of highly relevant evidence.

Thus, the Court should deny Defendants' Motion *in Limine* No. 6.

For the reasons stated herein, Plaintiffs respectfully request that all Defendants' motions *in limine* be denied.

DATED: January 20, 2023

**LABATON SUCHAROW LLP**

/s/*Michael P. Canty*
Michael P. Canty
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Email: mcanty@labaton.com
thoffman@labaton.com

*Lead Counsel for Lead Plaintiffs Carpenters Pension Trust Fund for Northern California; and Carpenters Annuity Trust Fund for Northern California and Counsel for City of Providence Employee Retirement System and the Class*

**PATRICK V. DAHLSTROM**
**LOUIS C. LUDWIG**
**Pomerantz LLP**
10 S. LaSalle Street Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

*Additional Counsel for Plaintiffs*