**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: THE ALLSTATE CORPORATION SECURITIES LITIGATION | Case No. 16-cv-10510<br>Hon. Robert W. Gettleman |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE

# TABLE OF CONTENTS

**Page**


LEGAL STANDARD ........................................ 1

ARGUMENT ........................................ 1

1. Plaintiffs' MIL No. 1: The Court Should Deny Plaintiffs' Motion to Bar Argument or Evidence Regarding Aggregate Damages. ........................................ 1

2. Plaintiffs' MIL No. 2: The Court Should Deny the Motion Because Defendants Are Not Asserting an Advice of Counsel Defense. ........................................ 3

3. Plaintiffs' MIL No. 3: The Court Should Reject Plaintiffs' Motion To Bar The Trial Testimony of Daniel Gordon, Whom Allstate Disclosed as a Witness Nearly Five Years Ago. ........................................ 5

4. Plaintiffs' MIL No. 4: The Court Should Deny Plaintiffs' Motion To Prohibit All Communications Between Counsel And Fact Witnesses. ........................................ 7

5. Plaintiffs' MIL No. 5: The Court Should Deny Plaintiffs' Motion Seeking To Bar Unidentified Litigation-Related Phrases. ........................................ 8

6. Plaintiffs' MIL No. 6: The Court Should Deny Plaintiffs' Motion Seeking To Exclude References To The Complaint And Other Pretrial Arguments. ........................................ 10

7. Plaintiffs' MIL No. 7: The Court Should Deny Plaintiffs' Motion To Exclude Evidence Of Defendants' So-Called Good Acts ........................................ 11

8. Plaintiffs' MIL No. 8: The Court Should Deny Plaintiffs' Motion Regarding SEC Inaction. ........................................ 12

9. Plaintiffs' MIL No. 9: The Court Should Deny Plaintiffs' Motion Seeking to Exclude Evidence and Argument Regarding Allstate's Stock Price Performance and Claim Frequency After the Class Period. ........................................ 13

10. Plaintiffs' MIL No. 10: The Court Should Deny Plaintiffs' Motion to Exclude of Any Evidence, Argument, and Testimony from a Fact Witness Regarding Allstate's Competitors' Claim Frequency. ........................................ 15

    A. Competitors' Disclosures About Claim Frequency Are Relevant to Defendants' Belief That Their Statements to Investors Were True When Made. ........................................ 16

B. Competitors' Disclosures About Claim Frequency Are Critical to Defendants' Explanation of Why They Continued to Study the Frequency Issue After February 2015 .................... 17

C. Defendants Will Testify That They Still Believe Their Statements Were True, and Competitors' Frequency Results Has Informed Those Beliefs. .................... 18

11. Plaintiffs' MIL No. 11: The Court Should Reject Plaintiffs' Motion To Exclude Evidence And Argument Regarding Purported "Phase II" Issues. .................... 19

CONCLUSION .................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bankatlantic Bancorp, Inc. Sec. Litig.*,
2010 WL 11426133 (S.D. Fla. Aug. 25, 2010)....................14

*Bell v. Fore Systems, Inc.*,
2002 WL 32097540 (W.D. Pa. Aug. 2, 2002)....................2

*In re Blech Sec. Litig.*,
2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003)....................1, 2

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 1403756 (C.D. Cal. June 3, 2005)....................2

*C & E Servs. v. Ashland Inc.*,
2008 WL 1744618 (D.D.C. Apr. 14, 2008)....................6

*Dunn v. Brown*,
2022 WL 19323 (N.D. Ill. Jan. 3, 2020)....................7

*Gassman v. Frischholz*,
2007 WL 1266291 (N.D. Ill. Apr. 30, 2007)....................7

*Gen. Citrus Int'l. Inc. v. Remien*,
2009 WL 2486164 (N.D. Ill. Aug. 10, 2009)....................1, 7

*Griffin v. Foley*,
542 F.3d 209 (7th Cir. 2008)....................13

*Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*,
271 F.R.D. 612 (N.D. Ill. 2010)....................7

*Hawthorne Partners v. AT&T Techs., Inc.*,
831 F. Supp. 1398 (N.D. Ill. 1993)....................1

*In re Homestore.com, Inc.*,
2011 WL 291176 (C.D. Cal. Jan. 25, 2011)....................11, 19

*Kaufman v. Motorola, Inc.*,
2000 WL 1506892, at *2 (N.D. Ill. Sep. 21, 2000)....................3

*Kennis v. Metro. W. Asset Mgmt., LLC*,
2018 WL 9440483 (C.D. Cal. Nov. 29, 2018)....................8

*Munoz v. PHH Mort. Corp.*,
2022 WL 138670 (E.D. Cal. Jan. 14, 2022) ....................15

*Native Am. Arts v. Earthdweller, Ltd.*,
2002 WL 1173513 (N.D. Ill. May 31, 2002) ....................1, 10

*Newman v. McNeil Consumer Healthcare*,
2013 WL 4460011 (N.D. Ill. Mar. 29, 2013)....................9, 11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
244 F. Supp. 2d 247 (S.D.N.Y. 2003)....................2, 3

*S.E.C. v. Koenig*,
557 F.3d 736 (7th Cir. 2009) ....................12

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315, 1343 (N.D. Ga. 2007) ....................3

*Shenwich v. Twitter, Inc.*,
2021 WL 1232451 (N.D. Cal. Mar. 31, 2021)....................13, 14

*Strong v. Clark*,
1990 WL 70421 (N.D. Ill. May 4, 1990) ....................7

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
2017 WL 5029601 (N.D. Ill. Nov. 3, 2017) ....................9

*In re Testosterone Replacement Therapy Products Liability Litigation*,
2021 WL 1611710, at *8 (N.D. Ill. Apr. 25, 2021) ....................12

*Thakore v. Universal Mach. Co. of Pottstown, Inc.*,
670 F. Supp. 2d 705 (N.D. Ill. 2009) ....................8

*Ty Inc. v. Softbelly's Inc.*,
2006 WL 5111124 (N.D. Ill. Apr. 7, 2006) ....................7

*United States v. Gilbertson*,
435 F.3d 790 (7th Cir. 2006) ....................13

*United States v. Lucas*,
395 F. Supp. 3d 241 (W.D.N.Y. 2019), *aff'd*, 2021 WL 3700944 (2d Cir. Aug. 20, 2021) ....................11

*Valdez v. Lowry*,
2021 WL 5769533 (N.D. Ill. Dec. 5, 2021) ....................12

*Wells v. Davis*,
2009 WL 3352642 (S.D. Ill. Oct. 16, 2009) ....................12

*In re WorldCom, Inc. Sec. Litig.*,
2005 WL 375314 (S.D.N.Y. Feb. 17, 2005) .....2

*In re WorldCom, Inc. Sec. Litig.*,
2005 WL 491397 (S.D.N.Y. Mar. 3, 2005) .....2

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*,
2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) .....9

**Other Authorities**

Fed. R. Evid. 402 .....4

Fed. R. Evid. 615 .....8

Fed. R. Civ. P. 26 .....6

Defendants The Allstate Corporation, Matthew E. Winter, and Thomas S. Wilson respectfully ask the Court to deny each of Plaintiffs' 11 motions in limine filed on January 10, 2023. ECF No. 515.

## LEGAL STANDARD

Excluding evidence in limine is proper "only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993). Moreover, the relief requested must be precise and limited to specific evidence that a party seeks to exclude. *Native Am. Arts v. Earthdweller, Ltd.*, 2002 WL 1173513, at *5 (N.D. Ill. May 31, 2002). In this instance, the relief sought in the body of the motions is often at odds with the benign-sounding headings for each individual motion, creating vague, overbroad, unduly burdensome, and improper motions not tailored to the claims and defenses in this matter. *See, e.g.*, *Gen. Citrus Int'l. Inc. v. Remien*, 2009 WL 2486164, at *8 (N.D. Ill. Aug. 10, 2009). For these reasons and others, as explained more fully below, Plaintiffs' motions should be denied.

## ARGUMENT

### 1. Plaintiffs' MIL No. 1: The Court Should Deny Plaintiffs' Motion to Bar Argument or Evidence Regarding Aggregate Damages.

Plaintiffs argue that the "proper" method to calculate damages in securities litigation "is to demonstrate damages on a per share basis." ECF No. 515 at 3. But the PSLRA does not prohibit argument or evidence regarding aggregate damages; far from it—calculation of aggregate damages remains the "common practice." *In re Blech Sec. Litig.*, 2003 WL 1610775, at *26 (S.D.N.Y. Mar. 26, 2003). Plaintiffs also speculate that any evidence or even reference to aggregate damages "is likely to distract the jury and unfairly prejudice Plaintiffs." ECF No. 513 at 5. Plaintiffs are wrong.

*First*, in securities litigation, "[i]t is the common practice to award an aggregate verdict for the class as a whole." *In re Blech*, 2003 WL 1610775, at *26; *see also In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375314, at *7 (S.D.N.Y. Feb. 17, 2005) ("Aggregate damages awards are a 'standard practice' in securities cases."); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403756, at *2 (C.D. Cal. June 3, 2005) ("[T]he aggregate approach is the traditional method [.]"). An award of aggregate damages "has long been standard practice and continues to be so." *In re Oxford Health Plans, Inc. Sec. Litig.*, 244 F. Supp. 2d 247, 249 (S.D.N.Y. 2003). As the court in *Worldcom* recognized, there is good reason for doing so:

> The benefits of an aggregate damages award are many. If the defendants are found liable by a jury, then it is appropriate that the jury make all of the determinations that can appropriately be made at the plenary trial to fix the amount that the class was damaged by their wrongdoing. Entry of an award will also permit entry of a final judgment so that there can be prompt appellate review, and will create a common fund to pay the litigation expenses of the class representatives and the administration costs associated with the claims process.

*In re WorldCom, Inc. Sec. Litig.*, 2005 WL 491397, at *4 (S.D.N.Y. Mar. 3, 2005).

Plaintiffs cite *Bell v. Fore Systems, Inc.*, 2002 WL 32097540 (W.D. Pa. Aug. 2, 2002), for the sweeping propositions that "aggregate damage is purely speculative" and the "aggregated class damages approach . . . would violate the PSLRA." ECF No. 513 at 4. In *Bell*, the court held that the use of trading models to determine total damages of absent class members was inconsistent with the 90-day "lookback" limitation on an individual purchaser's damages in the PSLRA that requires examination of each plaintiff's trading history. 2002 WL 32097540, at *4.

But *Bell*'s reasoning is flawed and misunderstands the statute: while the PSLRA modified the means by which damages are determined, "[f]ederal securities law has never permitted an individual person to recover in excess of his or her actual damages." *Oxford*, 244 F. Supp. 2d at 251. *Bell* has been heavily criticized: the court in *Oxford* soundly rejected *Bell*'s reasoning in

rejecting a motion to bifurcate: "All [the] basic [damages] rules were enshrined in the case law prior to the PSLRA. They remain valid. The existence of these rules was never held to require bifurcation, or prevent an award of lump sum damages to a class of purchasers to be administered by the Court as a common fund for their benefit." *Oxford*, 244 F. Supp. at 250 (S.D.N.Y. 2003).[1]

*Second*, Plaintiffs fare no better with their contention that any discussion at trial of an aggregate damages number will somehow "unfairly prejudice" Plaintiffs. Plaintiffs do not explain how any discussion of aggregate damages will "distract" the jury or cause prejudice; nor could they, since the use of aggregate damages is the "common practice" in securities litigations. Rather, it is Defendants that would be prejudiced by Plaintiffs' strategy to confuse the jury by presenting a seemingly trivial per-share damages award that is divorced from the real-world implication of a multi-hundred-million dollar damages verdict.

**2. <u>Plaintiffs' MIL No. 2</u>: The Court Should Deny the Motion Because Defendants Are Not Asserting an Advice of Counsel Defense.**

Plaintiffs style their second motion as a narrow request to prevent Defendants from using an advice-of-counsel defense at trial, but then proceed to ask for broader, unsupported relief in the body of their motion. The motion should be denied because (1) Defendants do not seek to utilize an advice-of-counsel defense, and (2) the other evidence Plaintiffs seek to exclude is unrelated to

[1] Plaintiffs' other authorities do not support the relief they seek here. For example, in *Kaufman v. Motorola, Inc.*, the court precluded testimony from the plaintiffs' expert because his trading model did not meet any of the *Daubert* standards, and the expert "candidly admitted it did not." 2000 WL 1506892, at *2 (N.D. Ill. Sep. 21, 2000). The court noted that "an adequate remedy *may* be fashioned by having the jury determine a per share damage loss," but did not mandate a per-share calculation, let alone bar any reference to aggregate damages. And in *In re Scientific-Atlanta, Inc. Securities Litigation*, a decision on class certification, the court did not rule on the propriety of an aggregate damages determination, and noted that "aggregate damages models have been employed in numerous other federal securities cases." 571 F. Supp. 2d 1315, 1343 (N.D. Ga. 2007).

the advice-of-counsel defense and instead relates to key issues in this case on which Plaintiffs have had an opportunity to seek and receive full discovery.

Plaintiffs argue Defendants should be barred from introducing "evidence or argument regarding any good faith reliance on the advice of counsel or the purported role of lawyers," ECF No. 515 at 8, because this evidence supports an advice-of-counsel defense and Defendants failed to timely and appropriately pursue such a defense. But Defendants do not seek to advance an advice-of-counsel defense. Defendants instead seek to provide evidence that both Wilson and Allstate's Law and Regulation Department followed the mandates of Allstate's Corporate Policy on Insider Trading ("Policy") and to explain the process through which Wilson effectuated his stock option exercise. Lawyers played a role in that process, but, as is clear from the relevant documentation, they did not provide legal advice in that process.

Allstate's Policy requires senior officers to receive preclearance from the Law and Regulation Department before buying or selling Allstate stock. *See* Colleen E. Baime Decl. in Opp'n to Pls.' Mots. in Limine Nos. 1–11 ("Supp. Baime Decl."), Ex. A. The Policy expressly stated, [redacted] *Id* at 10. Wilson's communications with Allstate's General Counsel Susan Lees in advance of his stock exercise prove his compliance with the Policy. Plaintiffs have had the opportunity to depose both Wilson and Lees on this issue at length. Neither of them claimed this preclearance conversation contained legal advice, and, while they did not memorialize the conversation, both Wilson and Lees are clear that the necessary conversation took place. *See* Supp. Baime Decl., Ex. B at 252:20–259:5; Ex. C at 128:19–128:22. Defendants do not assert that Lees provided legal advice to Wilson in his personal capacity or that he relied on any such advice. Preventing Defendants from presenting evidence as to this conversation as Plaintiffs seek would run afoul of Fed. R. Evid. 402, as this evidence is clearly

relevant and goes towards Wilson's lack of scienter: Wilson did everything he could to ensure his trade was proper and compliant with Allstate policy. Foreclosing Defendants' ability to present a full and fair defense to the jury on this issue would introduce error into the record.

Plaintiffs further seek to preclude evidence of the "purported role of lawyers." ECF No. 515 at 8. Though it is unclear precisely what Plaintiffs mean, for the avoidance of all doubt: Defendants do intend to present evidence from other attorney–witnesses, including Katherine Smith and Dan Gordon, in their capacities as employees of Allstate's Law and Regulation Department. Smith will testify as to her role in facilitating the exercise of Wilson's options exercise. Gordon will testify as to the Policy, its requirements, and the meaning of some of its provisions. Plaintiffs had the opportunity to seek discovery from both individuals, deposing Smith at some length. Neither of these individuals provided relevant attorney advice to any Defendants. As the information these two witnesses can provide is demonstrably relevant and critical to the defense, preventing Defendants from presenting such evidence would again be improper.[2]

**3. <u>Plaintiffs' MIL No. 3</u>: The Court Should Reject Plaintiffs' Motion To Bar The Trial Testimony of Daniel Gordon, Whom Allstate Disclosed as a Witness Nearly Five Years Ago.**

Plaintiffs seek to exclude trial testimony from Daniel Gordon, Allstate's Vice President and Assistant General Counsel, on the basis that "Plaintiffs have had no opportunity to depose Gordon." ECF No. 515 at 8. According to Plaintiffs, they face "significant risk of prejudice and unfair surprise" and "can only speculate" concerning Gordon's testimony because "Defendants

---

[2] In yet another back door attempt to tie Defendants' hands at trial, Plaintiffs briefly assert that Defendants should not be allowed to rely on the advice of their "accountants or actuaries" at trial. ECF No. 515 at 7. Not only do Plaintiffs provide no support for this argument, but, again, Plaintiffs have had every opportunity to seek non-privileged discovery from Allstate's accounting and actuarial departments. There is no reason to foreclose Defendants from presenting evidence that goes to the core of its relevant operations when Plaintiffs suffer no related prejudice.

failed to provide the subjects of information that may be provided by Gordon's testimony." *Id.* at 8, 9, 10. Not so.

Defendants timely disclosed Gordon as a potential witness in their initial Rule 26(a)(1) disclosures on May 2, 2018, and disclosed the subjects of his testimony: "Allstate public statements at issue; Wilson's Allstate stock ownership and stock options transactions." ECF No. 516-1 at 2. In addition, Gordon was one of just twelve potential witnesses listed in the initial Rule 26(a)(1) disclosure. Quite simply, there is no surprise, and no need for Plaintiffs to speculate as to the subject matter of his testimony. *See C & E Servs. v. Ashland Inc.*, 2008 WL 1744618, at *3–4 (D.D.C. Apr. 14, 2008) (denying motion in limine to exclude testimony of undeposed witnesses who were properly identified in defendant's Rule 26(a)(1) disclosure). Defendants complied with their disclosure obligations, and Plaintiffs had every opportunity to conduct discovery and take Gordon's deposition.

Now, almost five years after Defendants identified Gordon in their Rule 26(a)(1) disclosures, Plaintiffs contend that they "had no opportunity to depose Gordon" because they were "limited in the total number of depositions that could be taken." ECF No. 515 at 10. That, too, is false. Defendants did not prevent Plaintiffs from including Gordon among their deponents. What is more, the Court permitted Plaintiffs to take 12 additional depositions in excess of the default 10 depositions allowed under Federal Rule 30(a)(2)(A)(i). *See* ECF No. 264.

Further, Plaintiffs' demand seeks to disrupt the case schedule by reopening fact discovery for a belated deposition of Gordon. But this request is two and a half years too late: fact discovery ended in July 2020. *See* ECF No. 301. "Under the Federal Rules of Civil Procedure, it is the court's prerogative—indeed, its duty—to manage its caseload and to set and enforce discovery and other significant deadlines." *Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*, 271 F.R.D.

612, 617 (N.D. Ill. 2010); *see also Dunn v. Brown*, 2022 WL 19323, at *3 (N.D. Ill. Jan. 3, 2020) ("Deadlines are not suggestions to be taken lightly or complied with only as a matter of choice."). Plaintiffs' decision to not include Gordon in their nearly two dozen depositions is a problem entirely of their own creation, and their attempt to flout this Court's discovery deadlines should be denied.

All of Plaintiffs' authorities are inapposite. None of the cases they cite barred testimony from a witness that was included on a Rule 26(a)(1) disclosure. Rather, those cases concern witnesses who failed to appear for their depositions,[3] were not timely disclosed,[4] or, in one instance, served as trial counsel for a party.[5]

**4. Plaintiffs' MIL No. 4: The Court Should Deny Plaintiffs' Motion To Prohibit All Communications Between Counsel And Fact Witnesses.**

Plaintiffs seek to (1) prohibit counsel from any communications with fact witnesses and (2) bar witnesses from reading transcripts prior to their own testimony. ECF No. 515 at 11–12. Plaintiffs' motion should be denied for at least three reasons.

*First*, Plaintiffs' request is vague and overbroad. For example, it is unclear whether Plaintiffs seek to bar all communications with fact witnesses at any time, and whether that ban includes parties that are natural persons, *e.g.*, Wilson and Winter. Further, it is unclear whether the proposed ban on reading testimony would apply to parties and expert witnesses. The motion should be denied for the lack of clarity alone. *See Gen. Citrus Int'l. Inc.*, 2009 WL 2486164, at *8 (denying motion in limine as vague because "[t]his Court simply cannot determine what evidence [plaintiff] seeks to exclude").

---

[3] *Strong v. Clark*, 1990 WL 70421, at *4 (N.D. Ill. May 4, 1990).
[4] *Dunn*, 2022 WL 19323, at *3; *Ty Inc. v. Softbelly's Inc.*, 2006 WL 5111124, at *6 (N.D. Ill. Apr. 7, 2006).
[5] *Gassman v. Frischholz*, 2007 WL 1266291, at *5 (N.D. Ill. Apr. 30, 2007).

*Second*, Plaintiffs' request would radically change this Court's Rules for Conduct of Trials, which exclude witnesses (other than parties and experts) from proceedings until they testify, and sequester witnesses during adverse examination. *See* Hon. Robert W. Gettleman, Rules for Conduct of Trials. Plaintiffs' motion would distort this Court's sequestration of witnesses from the period of adverse examination to the entire trial, preventing Defendants from any communication with or preparation of its fact witnesses. Plaintiffs cite to no authority for this proposition, nor do they provide any explanation for why the Court's Rules should be rewritten to preclude the preparation of fact witnesses.

*Third*, Plaintiffs' motion should be denied under Federal Rule of Evidence 615 to the extent it seeks to bar parties and expert witnesses from hearing and reading testimony. Rule 615 prohibits the exclusion of (1) natural persons that are parties and (2) "a person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615. Expert witnesses are commonly considered to be "essential parties" that are immune from sequestration under Rule 615. *See Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 715 (N.D. Ill. 2009) (citing *United States v. Seschillie*, 310 F.3d 1208 (9th Cir. 2002)) (permitting expert witness to remain in courtroom during trial); *Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *4 (C.D. Cal. Nov. 29, 2018) ("[T]he 'essential witness' exception is most often applied in cases where the sequestered witness is an expert (rather than a fact witness whose recollection might be 'colored' by accounts of other witnesses).").

**5. <u>Plaintiffs' MIL No. 5</u>: The Court Should Deny Plaintiffs' Motion Seeking To Bar Unidentified Litigation-Related Phrases.**

Plaintiffs argue that Defendants should not be permitted to present any evidence, argument, or reference regarding attorneys' fees. ECF No. 515 at 13. Defendants do not oppose this portion of the motion. Plaintiffs also demand the exclusion of evidence, argument, or reference to the

phrases "litigation crisis," "lawsuit crisis," "lawyer-driven litigation," or "similar terms." *Id.* While Defendants do not oppose a limitation concerning so-called broad litigation trends (including the exact phrases identified by Plaintiffs in their motion), Plaintiffs' request to exclude evidence, argument, or reference to "similar terms" is vague and overbroad and should be denied because it may impede Defendants' ability to develop facts in support of their defenses.

As an initial matter, Plaintiffs' motion as it relates to "similar terms" should be denied because it is impermissibly "ill-defined." *Newman v. McNeil Consumer Healthcare*, 2013 WL 4460011, at *4 (N.D. Ill. Mar. 29, 2013) ("To attempt to predict all the possible references that should be barred would be overly speculative and improper for a court on a motion in limine.").

Moreover, Plaintiffs' motion should be denied because it may impair Defendants' ability to question witnesses at trial. For example, Defendants should be permitted to develop facts regarding the decision-making of Plaintiffs' fund administrators in evaluating their investment and commencing litigation. In ruling on similar motions—including some cited by Plaintiffs—courts have made clear that a bar on argument relating to "broader litigation effects or trends" does not preclude the parties from developing evidence in support of their defenses. *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) (excluding the use of broad litigation-related terms, but permitting defendant to develop theory that advertisements by plaintiffs' counsel seeking clients drove up adverse event reporting"); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2017 WL 5029601, at *6 (N.D. Ill. Nov. 3, 2017) (noting that exclusion of certain litigation-related phrases does not preclude "any argument that [plaintiff's] claim is meritless or is motivated by a desire for an award of damages.").

6. **<u>Plaintiffs' MIL No. 6</u>: The Court Should Deny Plaintiffs' Motion Seeking To Exclude References To The Complaint And Other Pretrial Arguments.**

Plaintiffs seek to exclude evidence or references to "decisions on motion(s) to dismiss, summary judgment, class certification, [and] Daubert decisions." ECF No. 515 at 15. Defendants do not oppose this portion of the motion. However, Plaintiffs also demand the exclusion of several other broad and ill-defined categories of evidence and argument, including any reference to "reframing the Complaint's allegations," "the substance of any motions in limine," and "all other pretrial arguments and determinations as to the scope of Plaintiffs' claims." *Id.* This portion of Plaintiffs' motion is overbroad and should be denied.

Plaintiffs' motion is too vague and unduly burdensome to merit consideration. *See Native Am. Arts*, 2002 WL 1173513, at *5 (denying motion in limine that "fail[ed] to sufficiently explain the evidence it seeks to exclude").[6] Due to the motion's lack of clarity, Defendants and the Court are left guessing what evidence Plaintiffs seek to exclude with their overbroad request. For example, even a mention of an allegation from the Complaint may constitute "reframing" and thus be excluded if Plaintiffs' motion is granted. Plaintiffs also do not explain how any of the categories of information they wish to bar may be prejudicial. Plaintiffs' motion concerning the "substance" of the motions in limine is particularly incomprehensible, as the Court will make such determinations in deciding the individual motions.

Accordingly, Plaintiffs' motion should be denied to the extent it seeks the exclusion of evidence beyond pretrial rulings and decisions.

---

[6] Notably, none of Plaintiffs' authorities provided the sweeping relief sought here—they did not exclude references to the complaint, bar the "substance" of all motions in limine, or prohibit any reference to "all pretrial arguments."

**7. <u>Plaintiffs' MIL No. 7</u>: The Court Should Deny Plaintiffs' Motion To Exclude Evidence Of Defendants' So-Called Good Acts.**

Plaintiffs seek the exclusion of a wide variety of information that they characterize as "character evidence." ECF No. 515 at 16. The motion should be denied for three reasons.

*First*, the request is overbroad and impermissibly vague. Plaintiffs seek to exclude broad categories of evidence or statements regarding Defendants' so-called "good acts," in which Plaintiffs lump together "the notion that Allstate is an ethical company," "the diversity of Allstate's workforce," and "the characterization of Wilson's leadership at the U.S. Chamber of Commerce," among other things. *Id.* But motions in limine should be appropriately targeted, as the Court will be better situated to rule on evidentiary matters in their factual context at trial. In rejecting a similar motion, this Court explained:

> The evidence that Plaintiffs seek to exclude is ill-defined: what constitutes evidence of a "good" company is unclear . . . . To attempt to predict all the possible references that should be barred would be overly speculative and improper for a court on a motion *in limine*. . . .[T]he Court will handle those questions as they arise at trial. The motion is denied.

*Newman v. McNeil Consumer Healthcare*, 2013 WL 4460011, at *4 (N.D. Ill. Mar. 29, 2013); *see also In re Homestore.com, Inc.*, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (denying motion to exclude evidence of defendant's character because "Plaintiff's request [w]as over-broad and vague, and therefore inappropriate for review at the motion *in limine* stage").

*Second*, the motion erroneously conflates "character evidence" with appropriate background evidence, such as Winter's military service and the diversity of Allstate's workforce. "[I]t is well within a trial court's discretion to allow testimony concerning a witness' background, including military service, as part of an introduction of the witness to the jury." *United States v. Lucas*, 395 F. Supp. 3d 241, 256 (W.D.N.Y. 2019), *aff'd*, 2021 WL 3700944 (2d Cir. Aug. 20, 2021). Plaintiffs have no answer to the long line of cases holding that military service is

appropriate background evidence and probative of credibility and reliability. *See, e.g.*, *Valdez v. Lowry*, 2021 WL 5769533, at *15 (N.D. Ill. Dec. 5, 2021) ("The military service of plaintiff (and defendant officers, for that matter) is appropriate background evidence."); *Wells v. Davis*, 2009 WL 3352642, at *2 (S.D. Ill. Oct. 16, 2009) ("Defendants oppose [plaintiffs'] request arguing that background information, including prior military service, is relevant and admissible. The Court agrees with Defendants."). Plaintiffs also do not explain why references to military service, diversity, or the Chamber of Commerce would be unfairly prejudicial.

*Third*, Plaintiffs' motion is premature because certain evidence that may be characterized as "good conduct" evidence may be admissible to rebut contentions that Defendants engaged in bad conduct. For example, in *In re Testosterone Replacement Therapy Products Liability Litigation*, this Court denied a motion in limine because the door may be opened to "good company" evidence "to rebut contentions that Actavis engaged in bad conduct, such as putting profits over people." 2021 WL 1611710, at *8 (N.D. Ill. Apr. 25, 2021).

**8. <u>Plaintiffs' MIL No. 8</u>: The Court Should Deny Plaintiffs' Motion Regarding SEC Inaction.**

This is another instance where Plaintiffs want to tell half the story to mislead the jury. Defendants agree with Plaintiffs that generally a party may not introduce evidence that a regulator decided not to take action in a particular matter, but there is an exception: when a party puts a subject matter at issue, it opens the door for the opposing party to introduce evidence to provide context that may have otherwise been inadmissible. *See S.E.C. v. Koenig*, 557 F.3d 736, 741 (7th Cir. 2009) (finding the district court did not abuse its discretion in allowing one party to introduce hearsay evidence in response to the other party placing the subject matter—witnesses' motivations—at issue; the objecting party "asked for it"); *Griffin v. Foley*, 542 F.3d 209, 219 (7th Cir. 2008) (finding the admission of evidence to rebut a false impression was proper, given the

objecting party "opened the door" to it); *United States v. Gilbertson*, 435 F.3d 790, 797 (7th Cir. 2006) (concluding the government was allowed to introduce otherwise inadmissible evidence because the defendant "opened the door").

Here, Plaintiffs have already demonstrated their intent to tar Wilson's stock option exercise with the label "insider trading." *See* Def.' Mot. in Lim. No. 6. Wilson did not engage in insider trading. Plaintiffs know that; they never brought a claim that he did. If they persist in using the misleading and loaded term, Defendants should be permitted to respond by telling the truth: neither Plaintiffs nor the SEC brought a claim for insider trading. Therefore, Defendants request that the Court deny this Motion and decide this issue, if necessary, during trial. If Plaintiffs open the door to this subject matter, Defendants should not be precluded from responding.

**9. <u>Plaintiffs' MIL No. 9</u>: The Court Should Deny Plaintiffs' Motion Seeking to Exclude Evidence and Argument Regarding Allstate's Stock Price Performance and Claim Frequency After the Class Period.**

Plaintiffs argue Defendants should be precluded from introducing any argument or evidence with respect to Allstate's post-Class Period claim frequency data and stock price performance. ECF No. 515 at 20. But evidence concerning Allstate's claim frequency and stock price after the Class Period is relevant to defenses Defendants intend to put forward at trial, and Plaintiffs' motion should be denied.

*First*, post-Class Period claim frequency data are relevant to Defendants' arguments concerning the driving factors of the increase in claim frequency and Defendants' knowledge and understanding of those factors.

The recent decision *Shenwich v. Twitter, Inc.*, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) is instructive. In *Shenwich*, the court denied defendants' motion in limine to exclude supposedly irrelevant post-class period data on daily active users and other metrics. *Id.* at *10. According to the court, "[w]hile statements made before or after the class period are not themselves actionable,

they may be relevant in that they shed light on the truth or falsity of Class Period statements." *Id.* (internal citations omitted). The same is true here.

Allstate has continued to monitor the movement of claim frequency data over time, including after the Class Period, and that information directly informs their views concerning the truthfulness of statements that Plaintiffs contend were false. For example, named Defendants Wilson and Winter will be witnesses at trial, and both will testify that even today, they continue firmly to believe that the statements Allstate made to investors during the Class Period were true. Part of the reason that Allstate and its witnesses remain so confident about the accuracy of these statements is because of what they have seen in their continued review of Allstate's claim frequency data.

Plaintiffs own expert, Dr. Tyler Leverty, relies on post-Class Period data in his analysis as to what was driving the increase in Allstate's claim frequency. For example, Dr. Leverty relies on frequency data through December 2015 in conducting regression analyses regarding BTT and CGR, (Supp. Baime Decl., Ex. D ¶ 206), and he uses monthly frequency data through December 2015 in his miles driven and precipitation regressions. *Id.* ¶¶ 155, 170. Thus, Plaintiffs cannot credibly claim that post-Class Period frequency data is irrelevant.

*Second*, Plaintiffs' attempt to bar evidence of Allstate's post-Class Period stock price is equally unavailing. Among other things, such evidence is highly relevant and essential to any damages calculation, which will require the examination of the daily stock price during the lookback period contemplated by the PSLRA. *See In re Bankatlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 11426133, at *1 (S.D. Fla. Aug. 25, 2010). Further, Plaintiffs fail to identify precisely what evidence they seek to exclude, which provides a separate reason to deny the motion. *See id.*

(denying similar motion in limine to exclude stock price performance outside the class period as "overbroad and vague").

Further, Plaintiffs fail to carry their burden to establish that any post-Class Period data on claim frequency or stock price would be more prejudicial than probative. Indeed, Plaintiffs offer only a conclusory statement that prejudice "would substantially outweigh any such [probative] value." ECF No 515 at 20. This is inadequate. *See Munoz v. PHH Mort. Corp.*, 2022 WL 138670, at *4 (E.D. Cal. Jan. 14, 2022) (denying motion in limine to exclude data outside the class period because the moving party's argument was "simply too conclusory to demonstrate the 'substantial' aspect of Rule 403's analysis").

**10. <u>Plaintiffs' MIL No. 10</u>: The Court Should Deny Plaintiffs' Motion to Exclude of Any Evidence, Argument, and Testimony from a Fact Witness Regarding Allstate's Competitors' Claim Frequency.**

Plaintiffs move in limine to bar Defendants from introducing any evidence, argument, or testimony from fact witnesses regarding what Allstate's competitors disclosed related to claim frequency during and immediately after the Class Period. ECF No. 515 at 21–24. Excluding such evidence would unfairly cripple Defendants' ability to establish three key points: (1) when Defendants told investors that external factors drove the claim frequency increase in late 2014 and early 2015, they believed their statements were true; (2) because competitors were *not* disclosing claim frequency increases around the same time, Defendants kept studying the issue, even though they believed their earlier statements remained correct; and (3) Defendants are testifying in good faith and credibly when they say that to this very day, they believe that the statements Plaintiffs challenge as lies were true.

A. Competitors' Disclosures About Claim Frequency Are Relevant to Defendants' Belief That Their Statements to Investors Were True When Made.

To establish liability, Plaintiffs must prove that Defendants *knowingly* made false statements. Defendants intend to show the jury that not only were their statements true, but they fully believed their statements to be true when made. Allstate did not assess claim frequency in a vacuum. It was constantly watching what competitors disclosed and comparing that to Allstate's own results. Winter, for example, will testify that he routinely listened to competitors' earnings calls and read their disclosures, including about claim frequency, and that this monitoring informed both his statements to Allstate's investors and his beliefs that his statements to investors were true. Whether competitors' disclosures about claim frequency were accurate or not is irrelevant for this purpose—the fact that competitors initially were not disclosing claim frequency increases, and then were, is part of what Defendants experienced in real time. It explains why they said what they said and did what they did.

On this issue, Plaintiffs ignore the fact that one of the statements they challenge specifically references Allstate's competitors' frequency. Plaintiffs assert that Allstate and Winter committed securities fraud during a May 6, 2015, earnings call when Winter stated:

> And so we saw precipitation increases and freeze increases in the first quarter that were pretty much unprecedented. *So you look at all of that and you come to the conclusion that in fact, this is an external trend. So given that it's an external, we believe that our competitors will react to it the same way we will react to it.*

ECF No. 517-12 at 10. Fact witnesses—including Winter—must be allowed to discuss this allegation, the facts related to it, and why Winter believed what he was saying was true. Doing so necessarily requires discussion of Winter's perceptions concerning Allstate's competitors' frequency.

B. Competitors' Disclosures About Claim Frequency Are Critical to Defendants' Explanation of Why They Continued to Study the Frequency Issue After February 2015.

Plaintiffs accuse Defendants of lying when they told investors in February 2015 that Allstate had extensively analyzed the claim frequency increase and believed external factors were driving the increase. After these alleged false statements, Defendants continued to research the claim frequency increase, forming a task force and continuing to analyze and re-analyze the data. Winter and other Allstate witnesses will testify that a key reason they continued to push on this issue—in addition to Allstate's continual effort to understand its business and deliver profitable growth for shareholders—is that Allstate's competitors had not yet disclosed claim frequency increases. When Winter told investors in February 2015 that Allstate had studied the issue to death and believed external factors were driving the frequency increase, he 100% believed that to be true—and he also found it troubling that competitors were not saying the same thing. To inform the jury why Winter said what he said, wrote what he wrote, and continued to press this issue—and why continued study of the claim frequency increase does not, in any way, undermine the truth of Winter's statements to shareholders—he must be permitted to explain his thinking, which hinges on his observations about competitors' claim frequency. *See, e.g.,* Supp. Baime Decl., Ex. E at 294:19–295:2 [redacted] ECF No. 478-86 at 2 (email from Winter in which he specifically mentions competitor results and its impact on his state of mind).

C. Defendants Will Testify That They Still Believe Their Statements Were True, and Competitors' Frequency Results Has Informed Those Beliefs.

Allstate has never told shareholders that internal growth drove the claim frequency increase—the position that Plaintiffs take here—because Defendants firmly believe, to this day, that Plaintiffs are wrong about that. Part of the reason that Defendants continue to believe Plaintiffs' theory is wrong is that—although competitors announced it later than Allstate—competitors *did* see the same externally driven claim frequency increase that Allstate experienced. To this day, competitors' delayed disclosure of a claim frequency spike informs Defendants' beliefs about the truthfulness of their statements. For these purposes, again, it does not matter whether competitors *actually* experienced a claim frequency increase (something the experts will debate); what matters for fact witnesses is the impact that competitors' statements had on Defendants' state of mind, both in 2014–15 and now, when witnesses testify in court during this trial. It is critical state-of-mind evidence.

Plaintiffs' suggestion that this Court already relegated competitor frequency to irrelevance at the parties' October 5, 2020, status conference is incorrect and takes the Court's statements out of context. The Court's statements that day related only to class certification—not the merits. The Court said, regarding competitor information: "I'm not particularly convinced that that's relevant to the class certification decision in this case." Supp. Baime Decl., Ex. F, at 15. The Court did not opine—nor should it have given the case's posture at the time—about how competitor frequency related to the merits.

Finally, Plaintiffs also disregard the fact that documents on their trial exhibit list reference Allstate's competitors and the frequency experience those competitors were having during the class period. ECF No. 517-3 (Pls.' List of Exhibits for Trial; *see, e.g.*, Exhibit Nos. 178 and 209 (underlying documents previously filed under seal at ECF No. 478-41 (Exhibit 47 at slide 17) and

ECF No. 478-86 (Exhibit 110 at 2)). To the extent Plaintiffs are permitted to introduce these exhibits at trial, Defendants should not be barred from fully explaining the context and meaning of these documents, including their references to competitors' frequency.

**11. Plaintiffs' MIL No. 11: The Court Should Reject Plaintiffs' Motion To Exclude Evidence And Argument Regarding Purported "Phase II" Issues.**

Plaintiffs seek to exclude evidence or argument regarding purported "individual issues of reliance" during "Phase I of the trial." ECF No. 515 at 24. But, as Plaintiffs concede, "[t]he [p]arties have not reached agreement as to whether trial should be bifurcated," and Plaintiffs' motion concerning bifurcation has not been resolved.[7] Plaintiffs' motion, therefore, is premature and should be denied. *See In re Homestore.com, Inc,* 2011 WL 291176, at *3 (C.D. Cal. Jan. 25, 2011) (denying motion in limine as "pre-mature [sic] as Plaintiff must first establish it is entitled to use the 'fraud on the market theory' . . . to establish that the class . . . suffered damages . . . before it can show that evidence relating to Plaintiff's individualized proof of reliance is not relevant").

## CONCLUSION

For the reasons stated above, Defendants respectfully ask the Court to deny Plaintiffs' 11 motions in limine.

[7] Plaintiffs separately filed a Motion to Bifurcate Trial (the "Motion to Bifurcate") on January 10, 2022. ECF No. 510. Defendants will respond to the Motion to Bifurcate pursuant to the briefing schedule set by the Court.

Dated: January 20, 2023
Chicago, Illinois

MCDERMOTT WILL & EMERY LLP

By: /s/ Colleen E. Baime
Coleen E. Baime (IL- 9846481)
cbaime@mwe.com

Steven S. Scholes (IL - 6191220)
sscholes@mwe.com
Brigid McCarthy (IL- 6330102)
bemccarthy@mwe.com
444 W. Lake Street
Chicago, Illinois 60606
312.984.7700

DLA PIPER LLP (US)

Kenneth L. Schmetterer
kenneth.schmetterer@dlapiper.com
Yan Grinblat
yan.grinblat@dlapiper.com
444 W. Lake Street
Chicago, Illinois 60606-0089
312.368.4000

John J. Clarke, Jr. (*pro hac vice*)
john.clarke@dlapiper.com
1251 Avenue of the Americas
New York, New York 10020-1104
212.335.4500

*Attorneys for Defendant The Allstate Corporation*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Charles F. Smith (IL-6195537)
charles.smith@skadden.com
Gail E. Lee (IL-6318334)
gail.lee@skadden.com
155 N. Wacker Drive
Chicago, Illinois 60606-1720
312.407.0700

*Attorneys for Defendant Thomas J. Wilson*

SALVATORE PRESCOTT PORTER & PORTER, PLLC

Julie B. Porter (IL- 6243787)
porter@sppplaw.com
Suzanne B. Notton (IL- 6316981)
notton@sppplaw.com
1010 Davis Street
Evanston, IL 60201
(312) 283-5711

*Attorneys for Defendant Matthew E. Winter*