**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE THE ALLSTATE CORPORATION SECURITIES LITIGATION | Case No. 16-cv-10510 <br><br> Hon. Robert W. Gettleman <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF
CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL BACKGROUND ............................................................................. 2

ARGUMENT .............................................................................................................. 5

I.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................ 5

    A.     Standards Governing Approval of Class Action Settlements ................... 5

    B.     Approval of the Settlement Is Likely Under Rule 23(e)(2) ..................... 6

        1.     Class Representatives and Counsel Have Adequately Represented the Class ............................................................................... 6

        2.     The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations ........................................................................ 7

        3.     The Relief Provided by the Proposed Settlement Is Adequate ............... 8

            a.     The Settlement Provides Significant and Certain Benefits to the Class ................................................................. 8

            b.     The Effective Process for Distributing Relief ............................. 12

            c.     Anticipated Attorneys' Fees and Expenses ................................. 13

II.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ........................ 13

III.     PROPOSED SCHEDULE OF EVENTS .................................................... 15

CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 C 2998, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ...................................................6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
No. 94C 897, 1996 WL 167347 (N.D. Ill. Apr. 4, 1996).........................................................14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................................................10

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v.*
*Pricewaterhouse Coopers, LLP*,
212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................................8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...................................................................................................5

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
No. 02-5893, 2012 WL 4343223 (N.D. Ill. Sept. 21, 2012).................................................11

*McCue v. MB Fin., Inc.*,
No. 1:15-cv-00988, 2015 WL1020348 (N.D. Ill. Mar. 6, 2015) ............................................8

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................8

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................................11, 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
No. 3:160cv0815-PPS-MGG, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020).............8, 11, 14

*Silverman v. Motorola*,
No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012),
*aff'd*, 739 F.3d 956 (7th Cir. 2013).......................................................................................13

*Washtenew Cnty. Emps. Ret. Sys. v. Walgreen Co.*,
No. 1:15-cv-3187, ECF No. 526 (N.D. Ill. Oct. 11, 2022) .....................................................13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .........................................................................................6, 7, 8

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F)...............................................................................................15

**Rules**

Fed. R. Civ. P. 23 ................................................................................................1, 2, 6, 14

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................15

Fed. R. Civ. P. 23(e) ......................................................................................................1, 5

Fed. R. Civ. P. 23(e)(1) ....................................................................................................13

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................5, 6, 13

Fed. R. Civ. P. 23(e)(2) ...............................................................................................5, 6, 13

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(i) .............................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...........................................................................................6

Fed. R. Civ. P. 23(e) .......................................................................................................6

Fed. R. Civ. P. 23(e)(3) ....................................................................................................6

Fed. R. Civ. P. 23(f) .....................................................................................................3, 7

**Other Authorities**

David F. Herr, *Manual for Complex Litigation* (4th ed. 2019)........................................5

Carpenters Pension Trust Fund for Northern California, Carpenters Annuity Trust Fund for Northern California (together, "Northern California Carpenters" or "Lead Plaintiffs") and named plaintiff City of Providence ("Providence" and, together with Northern California Carpenters, "Class Representatives"), on behalf of themselves and the members of the certified Class, submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed Settlement of the above-captioned action (the "Action"), pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of August 11, 2023 ("Stipulation"), which was entered into by all Parties to the Action.[1]

## <u>PRELIMINARY STATEMENT</u>

Pursuant to the Settlement, Allstate has agreed to cause the payment of, on behalf of all Defendants, $90,000,000 in cash in exchange for the release of all claims asserted in the Action, or that could have been asserted. Class Representatives request that the Court preliminarily approve the proposed Settlement. As explained herein, Class Representatives respectfully submit that the Settlement represents a very favorable recovery for the Class and satisfies all of the Rule 23(e) approval factors and Seventh Circuit precedent.

Upon the Court's entry of the proposed Preliminary Approval Order, Class Representatives will provide notice of the Settlement's terms and conditions to potential Class Members. Following a final approval hearing (the "Settlement Hearing"), the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate. At the Settlement

---

[1] All capitalized terms used and not otherwise defined in this memorandum of law have the meanings ascribed to them in the Stipulation, which is attached as Exhibit 1 to the Declaration of Michael P. Canty ("Canty Decl."), filed herewith. Defendants are The Allstate Corporation ("Allstate" or the "Company"), Thomas J. Wilson and Matthew E. Winter (collectively, "Defendants," and together with Class Representatives, the "Parties").

Hearing, the Court will also be asked to approve the proposed Plan of Allocation for distributing Settlement proceeds among eligible Class Members and to consider Class Counsel's request for an award of attorneys' fees and Litigation Expenses.

The proposed Preliminary Approval Order, negotiated by the Parties, will, among other things: (i) preliminarily approve the Settlement on terms set forth in the Stipulation; (ii) approve the form and content of the Settlement Notice, Claim Form, and Summary Notice, attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) find that the procedures for disseminating notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing and a schedule for various Settlement-related events; and (v) appoint A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator") to administer the Settlement process.

## PROCEDURAL BACKGROUND

The Action commenced in November 2016 with the filing of an initial complaint against Allstate and certain of its executives.  ECF No. 1.  On January 17, 2017, the Court issued an order appointing Northern California Carpenters as Lead Plaintiffs and approving their selection of Labaton Sucharow LLP as Lead Counsel for the Class ("Lead Counsel") and Pomerantz LLP as Liaison Counsel for the Class.  ECF No. 35.

Lead Plaintiffs filed the Consolidated Class Action Complaint on March 30, 2017 (the "Complaint"), alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act").  ECF No. 50.  Defendants moved to dismiss the Complaint on June 1, 2017. ECF Nos. 54-56.  On February 27, 2018, the Court issued a Memorandum Opinion and Order denying Defendants' motion to dismiss.  ECF No. 67.

On June 22, 2018, Lead Plaintiffs moved for class certification, appointment of the Northern California Carpenters and Providence as class representatives, and appointment of Lead Counsel as class counsel. ECF No. 88. Following extensive briefing of the motion, on March 26, 2019, the Court granted Lead Plaintiffs' class certification motion. ECF No. 172. Defendants filed a petition for permission to appeal the Court's class certification order under Fed. R. Civ. P. 23(f) in the Seventh Circuit Court of Appeals, which the Seventh Circuit granted on April 25, 2019.

Lead Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint ("Second Amended Complaint"), to add Providence as a named plaintiff on September 12, 2018. ECF No. 106.

On June 10, 2019, Defendants filed their appellate brief and Lead Plaintiffs filed their appellees' brief on July 10, 2019, and on July 16, 2020, the Seventh Circuit issued an opinion affirming this Court's class certification order, in part, and vacating and remanding it, in part. On October 5, 2020, the Court ordered the Parties to submit supplemental class certification briefing. On December 21, 2020, the Court issued its second order granting class certification. ECF No. 348. Defendants filed a petition to appeal that order in the Seventh Circuit on January 4, 2021, which the Seventh Circuit denied following briefing on the petition.

Beginning on March 12, 2021, notice of the pendency of the Action (the "Class Notice") was mailed to potential Class Members and made available on the case website, www.AllstateSecuritiesLitigation.com. The Class Notice provided Class Members with the opportunity to request exclusion from the Class (*i.e.*, to "opt out"), the requirements for requesting exclusion, and a May 11, 2021 deadline for seeking exclusion. Information in summary form was also published in *Investor's Business Daily* and transmitted over the Internet via *PR Newswire*. There were three requests for exclusion from the Class. ECF No. 419.

Before the Parties agreed to settle the Action, they had completed extensive fact and expert discovery, which including taking or defending 35 fact and expert depositions and Class Counsel's review of nearly 300,000 pages of documents produced by Defendants and third parties. Defendants filed a motion for summary judgment, seeking dismissal of all claims alleged in the Action, which Class Representatives opposed on May 12, 2022. ECF Nos. 456, 475, 487. On July 26, 2022, the Court issued an order granting in part and denying in part Defendants' summary judgment motion. ECF No. 492.

The Parties submitted a joint pretrial order on January 11, 2023. ECF No. 517. On January 10, 2023, Class Representatives filed a motion to bifurcate trial, Defendants filed a trial brief, and the Parties filed various motions *in limine*. ECF Nos. 510, 507-09, 513-15. The motions were pending when the Parties agreed to a resolution of the Action.

Following the submission of the Joint Pretrial Order, the Parties agreed to explore the possibility of a negotiated resolution of the Action and engaged the Honorable Layn R. Phillips (Ret.), a well-respected and highly experienced mediator and retired federal judge who had conducted two prior mediations in the Action, one in August 2019 and the second in June 2022. In advance of a June 28, 2023 mediation session, Class Representatives provided a detailed mediation statement to the mediator, which addressed issues of both liability and damages. On June 28, 2023, a representative of Northern California Carpenters and counsel for all Parties met for a full day mediation session with Judge Phillips in an attempt to reach a settlement. The Parties reached an agreement in principle to settle the Action that day and executed a Term Sheet, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers.

## ARGUMENT

I.  **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

A.  **Standards Governing Approval of Class Action Settlements**

As a matter of public policy, settlement is a strongly favored method for resolving class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). Federal Rule of Civil Procedure 23(e) requires judicial approval of the settlement of class actions. Such approval involves a two-step process: first, a "preliminary approval" order authorizing notice of the proposed settlement be provided to the class; and second, after notice has been provided and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See* David F. Herr, *Manual for Complex Litigation*, at §13.14 (4th ed. 2019).

In determining whether notice should be provided to the class, the reviewing court considers whether the court "***will likely be able to***" finally approve the settlement, given the factors enumerated in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B).[2] Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)  class representatives and counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

  (i)  the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

---

[2]  Herein, internal citations are omitted and all emphasis is added unless otherwise noted.

(iv)    any agreement required to be identified under Rule 23(e)(3)[3]; and

(D)    the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).[4]  Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*, evaluating whether it is fair, adequate, and reasonable.  At this preliminary approval stage, the Court's task is to determine whether the Settlement will "likely" satisfy the standard for final approval.  *See* Fed. R. Civ. P. 23(e)(1)(B).  In other words, the court need only "'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards."  *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2998, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (granting approval of class action settlement).

## B.    Approval of the Settlement Is Likely Under Rule 23(e)(2)

### 1.    Class Representatives and Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) instructs courts to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  As set forth herein,

---

[3]    Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement.  Here, in addition to the Stipulation, on June 28, 2023 the Parties executed a settlement term sheet and, as of August 11, 2023, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement").  The Supplemental Agreement sets forth the conditions under which Allstate has the discretion to terminate the Settlement in connection with requests for exclusion from the Class. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement.  Such supplemental agreements are kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The term sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

[4]    The Rule 23(e)(2) factors overlap with the Seventh Circuit's previously-determined final approval factors: (1) the strength of the case, balanced against the settlement amount; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the opinion of competent counsel; and (7) the stage of the proceedings.  *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

Class Counsel is highly experienced in securities class action litigation, and both Class Representatives and Class Counsel have diligently prosecuted the Action and considered the benefits of a negotiated resolution. Class Representatives and Class Counsel have, for example, conducted a thorough investigation; prepared and filed detailed consolidated amended complaints; prepared oppositions to Defendants' motion to dismiss; successfully moved for class certification and overcame a Rule 23(f) appeal; completed fact discovery that included the review of more than 46,000 documents produced by Defendants and third parties (nearly 300,000 pages) and taking or defending 27 fact depositions; completed expert discovery, which included the Parties' submission of 15 expert reports, including oppositions and replies thereto, and taking or defending eight expert depositions; opposed Defendants' motion for summary judgment; extensively prepared for trial, including by drafting the Proposed Pretrial Order and exhibits; briefed a motion to bifurcate the trial; and prepared for and participated in three mediation sessions, including preparation of mediation statements. Class Representatives and Class Counsel have carefully considered the benefits of the Settlement and believe it to be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A); *see also Accretive*, 773 F. 3d at 863-64 (stating that "'the opinion of competent counsel'" is a relevant factor for settlement approval).

### 2. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As noted above, the Parties participated in two separate mediation sessions that did not result in a resolution of the Action - one in August 2019 and the second in June 2022. It was only after extensive litigation and a third mediation session before Judge Phillips on July 28, 2023 that the Parties agreed to settle. Accordingly, the proposed Settlement was clearly the result of extensive arm's-length negotiations among highly-experienced and informed counsel over the span of four years. This arm's-length process supports approval.

*See McCue v. MB Fin., Inc.,* No. 1:15-cv-00988, 2015 WL1020348, at *2 (N.D. Ill. Mar. 6, 2015) (preliminarily approving settlement and finding it to be "result of extensive, arms'-length negotiations by counsel" with the assistance of an experienced mediator"); *Shah v. Zimmer Biomet Holdings, Inc.,* No. 3:160cv0815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (preliminarily approving settlement and noting that the settlement was the "product of two lengthy mediation sessions" conducted by two leading mediators). Indeed, "a strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers, LLP*., 212 F.R.D. 400, 410 (E.D. Wis. 2002).

### 3. The Relief Provided by the Proposed Settlement Is Adequate

#### a. The Settlement Provides Significant and Certain Benefits to the Class

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Relatedly, the Seventh Circuit has instructed courts to consider "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" and "'the complexity, length, and expense of further litigation.'" *Accretive*, 773 F.3d at 863-64. Courts have recognized that "[s]ecurities fraud litigation is long, complex and uncertain." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (collecting cases).

Here, while Class Representatives remain confident in their ability to ultimately prove their claims, further litigation and trial is always a costly and risky proposition. As an initial matter, Class Representatives faced challenges in proving that all of the surviving misstatements were materially false. Defendants have strenuously argued that Class Representatives would be unable to prove that each of their statements were false and misleading at trial. For example, Defendants have argued that the evidence at trial would show that the Class Period should begin on December

9, 2014 at the earliest because, based on the reasoning in the Court's summary judgment ruling, none of the alleged misstatements in October 2014 could provide a basis for liability under the securities laws. *See* ECF No. 503 ("Defendants' Trial Brief") at 1 n.1 (citing ECF No. 492 (Summary Judgment Order at 8–9 ("Allstate had no duty during its third-quarter earnings call to make any statements regarding a potential frequency increase in the fourth quarter, and Allstate spoke only about its third-quarter results. . . . Consequently, no reasonable jury could find the October 30, 2014 statements to be misleading, or the basis for securities fraud."). Defendants explicitly stated their intent to "bring an appropriate motion for partial class de-certification as to the beginning of the class period upon demonstrating this at trial." *Id.* at 1.

Defendants also have argued they would prove at trial that they did not make ***any*** misrepresentations concerning claim frequency. *See id.* at 1. To the contrary, they have argued that Allstate accurately and timely disclosed the Company's increase in claim frequency and did so with much more detail than the securities laws require. Specifically, Defendants noted that Allstate voluntarily disclosed substantial amounts of additional information concerning claim frequency on a quarterly basis in an "Earnings News Release" and an "Investor Supplement." *Id.* Defendants further argued they would prove at trial that Allstate accurately reported its understanding of the factors that caused the increase—namely, "miles driven and precipitation." *Id.* at 1-2. Defendants stated their understanding "was based on Allstate's own contemporaneous, internal analyses showing that frequency was up across new and renewal business, and that Allstate's customers were driving more and in worse weather, which resulted in more accident claims." *Id.* at 2. Defendants further stated they also would "present evidence that Allstate's competitors, including GEICO and Progressive, experienced increased claim frequency during the same period and for the same reasons." *Id.* Thus, Defendants argued, "in every instance, Allstate

told the public the truth about claim frequency in its quarterly announcements and other public statements during the Class Period." *Id.*

Defendants also would likely have argued that, for the same reasons, they did not act intentionally or recklessly (*i.e.*, with scienter). *See id.* at 2 (citing *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008)). Defendants stated, "In addition to being factually accurate, Allstate's public statements were and remain consistent with its internal communications and analyses. Allstate continuously analyzed changes in claim frequency and accurately updated the public on what its analyses indicated each quarter." *Id.*

In addition, Defendants have argued that Class Representatives would not be able to prove loss causation, materiality or damages at trial. *See id.* at 2; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Specifically, Defendants argued, "Allstate warned the market that a risk of increased frequency existed when it implemented its growth initiatives before the Class Period, and Plaintiffs' experts ignore this critical factor. Plaintiffs' experts also overlook alternative causes for changes in Allstate's stock price, and use a damages theory that incorrectly assumes Allstate had a duty to engage in prognostication." Defendants' Trial Brief at 2-3.

Defendants further argued that, while Class Representatives planned to establish reliance using the fraud-on-the-market doctrine, "they would have to establish the evidentiary prerequisites for doing so, and Defendants would be entitled to rebut reliance both on a class-wide and individual basis." *Id.* at 2 n.2 (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). Defendants argued that, if the trial were bifurcated, then Defendants would be "entitled to further discovery as necessary to fully develop and present these issues." *Id.* (citing *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 586 (S.D.N.Y. 2011) (absence of formal pre-trial order specifying that individual

issues were reserved for after class trial did not preclude resolution of individualized issues in further proceedings after class trial); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-5893, 2012 WL 4343223, at *5 (N.D. Ill. Sept. 21, 2012) (after Phase 1 trial, court authorized several months of discovery from class members on individual reliance and claim issues, involving depositions and culminating in a summary judgment process before a Phase 2 trial).

In sum, Defendants argued, "As a result of these failures, Plaintiffs will be unable to prove their claims and will not recover any damages at trial." *Id.* at 2-3. Acceptance of any such arguments regarding loss causation, materiality, or damages by a jury, in whole or part, would dramatically limit any potential recovery for the Class, or eliminate it altogether.

Finally, Defendants explicitly stated their intention "to move for a directed verdict at the close of evidence." *Id.* at 15. Class Representatives and the Class faced appellate risk from a favorable ruling on such a motion, the motions *in limine*, or any number of other evidentiary rulings the Court would have to make during trial.

In contrast, the Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. Indeed, the Settlement represents a meaningful portion of the Class's reasonably recoverable damages, as estimated under various potential scenarios analyzed by financial economists retained by Class Representatives. If the Class's claims survived trial, post trial motions, and appeals completely intact, and liability and damages were found 100% supported at trial, then aggregate damages were estimated at approximately $556 million, making the Settlement a recovery of approximately 16% of estimated damages. This percentage is far greater than most other court-approved securities settlements in courts within the Seventh Circuit. *See, e.g., Shah v. Zimmer Biomet Holdings, Inc.,* 2020 WL 5627171, at *5 (preliminarily approving $50 million settlement representing 8% of plaintiffs' maximum possible damages); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving settlement representing 10% of

11

estimated damages and noting approval of settlements around or below this percentage). Moreover, if Defendants' arguments regarding the October 2014 misstatements prevailed and those misstatements were trimmed from the case, then the Class Period would start on December 9, 2014, and the aggregate damages were estimated at $531 million. Under this scenario, the Settlement represents approximately 17% of estimated damages.

The $90 million Settlement also far exceeds the median reported recovery in securities class actions in 2022, which was $13 million, and $10.2 million from 2017 through 2021. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2022 Review and Analysis, at 1 (Cornerstone Research 2023), attached as Exhibit 2 to the Canty Declaration.

In addition to the substantial risks and uncertainty inherent in continued litigation and trial, further litigation of the Action would also be extremely expensive and time consuming for both sides. The fact that the Settlement eliminates this delay and expense, along with the risks discussed above, strongly favors preliminary approval.

### b. The Effective Process for Distributing Relief

The method and substance of the proposed claim process is effective. The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, A.B. Data, which was previously appointed by the Court to disseminate the Class Notice. *See* Exhibit 3 (A.B. Data background material). The Claims Administrator will employ a well-tested protocol for processing claims in a securities class action. A potential Class Member will submit a Claim Form that requests the information necessary to calculate the claim pursuant to the proposed Plan of Allocation. The Plan of Allocation, which is reported in full in the Settlement Notice, will govern how claimants' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. Claimants will be notified of any defects or conditions of ineligibility in their claims and will be given the chance to contest the

rejection of their claims. *See* Stipulation at ¶28(a)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

### c. Anticipated Attorneys' Fees and Expenses

Class Counsel will request an award of attorneys' fees not to exceed 25% of the Settlement Fund and expenses not to exceed $4,600,000, which may include an application for reimbursement by the Class Representatives pursuant to the PSLRA, all to be paid from the Settlement Fund. The application will be made at the time Class Counsel moves for final approval of the Settlement. Class Counsel's requested fees in this case are well within the range of reasonableness. *See, e.g., Washtenaw Cnty. Emps. Ret. Sys. v. Walgreen Co*., No. 1:15-cv-3187, ECF No. 526, (N.D. Ill. Oct. 11, 2022), (awarding 27.5% of $105 million settlement); *Silverman v. Motorola*, Inc., No. 07 C 4507, 2012 WL 1597388, at *1, 5 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million settlement), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

In sum, the proposed Settlement satisfies each of the Rule 23(e)(2) factors and should be preliminarily approved so the Settlement Notice can be sent to potential members of the Class.

## II. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Class Counsel propose to provide Class Members notice of the Settlement by (i) mailing a copy of the long-form Settlement Notice to all potential Class Members who can reasonably be identified and located using mailing information obtained in connection with the Class Notice, as supplemented by banks and brokers (nominees) who may have additional customers; (ii) publication of the Summary Notice in *The Wall Street Journal*; and (iii) dissemination of the Summary Notice on the internet using *PR Newswire*. The Settlement Notice and Summary Notice are attached to the Preliminary Approval Order as Exhibits A-1 and A-3.

13

The Settlement Notice and Claim Form will also be posted on both the case website and Class Counsel's website. Sending the Settlement Notice by first-class mail, combined with the publication of the Summary Notice in a major publication, and posting the Settlement Notice on a website is typical of notice provided in other securities class actions and satisfies the requirements of Rule 23 and due process. *See*, *e.g.*, *Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at \*6. Accordingly, the proposed notice program is reasonably calculated to apprise Class Members of the Settlement and afford them an opportunity to present their objections.

In addition, the form and substance of the notice program are also sufficient. The proposed forms of notice collectively describe the terms of the Settlement; the considerations that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and Litigation Expenses that may be sought; the procedure for objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.[5]

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Class Representatives prevailed on each of their claims; (iii) that Class Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and

---

[5]    In light of the extensive notice of pendency program previously provided – and the ample opportunity afforded to Class Members to request exclusion from the Class at that time – Class Representatives respectfully submit that no second opportunity to request exclusion should be provided to Class Members, and the proposed Settlement Notice does not provide for a second opportunity. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* No. 94C 897, 1996 WL 167347, at \*4 (N.D. Ill. Apr. 4, 1996) ("due process does not warrant a second chance to opt-out of the plaintiff class"). As discussed above, the Class Notice provided Class Members with the opportunity to request exclusion, explained that right, and set forth the deadlines and procedures for doing so. The Class Notice also informed Class Members that if they choose to remain a member of the Class, they would "be bound by all court orders, whether favorable or unfavorable. . . ." There were only three requests for exclusion. ECF No. 419.

14

expenses determined on an average per share basis), as well as a request for a reimbursement award to Class Representatives; (iv) the name, telephone number, and address of a representative of Class Counsel who will be available to answer questions; (v) the reasons why the Parties are proposing the Settlement; and (vi) other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Thus, the proposed Settlement notice program provides the information required under the PSLRA and courts have found that such notice constitutes the "best notice that is practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, in granting preliminary approval of the proposed Settlement, Class Representatives respectfully request that the Court also approve the Parties' proposed form and method of giving notice to the Class.

## III.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Settlement Notice and publishing the Summary Notice, and deadlines for objecting, filing papers in support of the Settlement and request for fees and expenses, and the submission of Claim Forms. Class Representatives propose the schedule attached hereto as Appendix A, with a final Settlement Hearing occurring the week of November 20, 2023 either in person or remotely, at the Court's convenience.

## <u>CONCLUSION</u>

For all the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval and the Preliminary Approval Order should be entered.

DATED:  August 14, 2023                              Respectfully submitted,

**LABATON SUCHAROW LLP**
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)

15

*s/ Michael P. Canty*
MICHAEL P. CANTY

140 Broadway
New York, New York 10005
Telephone:  (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com

*Class Counsel for Class Representatives and the Class*

**POMERANTZ LLP**
PATRICK V. DAHLSTROM
LOUIS C. LUDWIG

10 S. LaSalle Street Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

*Additional Counsel for Plaintiffs*

16

## APPENDIX A

| Event | Proposed Timing |
|---|---|
| Deadline for commencing the mailing of the Settlement Notice and Claim Form to Settlement Class Members ("Notice Date") | Not later than 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, but preferably the week of November 20, 2023 |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |